**Clema J. FIELDS, SSN: 226–38–1690, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. 91–0060–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

April 1, 1992.

---

Donald E. Earls, Norton, Va., for plaintiff.

Jean M. Barrett, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Plaintiff has filed this action challenging the final decision of the Secretary of Health and Human Services denying plaintiff's claim that she is not subject to an increased premium surcharge of 90 percent as a re-enrollee in the supplemental medical insurance program (SMI) under Part B of the Medicare program. The Administrative Law Judge (ALJ) upheld the assessment of the surcharge after a hearing in October 1990, and the Appeals Council denied her request for review. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g), as incorporated by 42 U.S.C.A. § 1395ff (West 1992).

This review is limited to a determination as to whether there is substantial evidence to support the Secretary's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Secretary must be affirmed. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws,* 368 F.2d at 642. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Title XVIII of the Social Security Act, 42 U.S.C.A. §§ 1395–95cc (West 1992), established the Medicare program. Medicare Part A provides hospital-related insurance for individuals, primarily those over the age of 65, and is financed by the payroll contributions of employees and employers. *Id.* § 1395c to 1395i–4. Anyone entitled to Medicare Part A, or who is age 65 or older, may enroll in Medicare Part B. *Id.* § 1395o. Medicare Part B is an elective or "voluntary insurance program" which is "financed from premium payments by enrollees" in addition to federal government appropriations. *Id.* § 1395j. It provides benefits for physician and outpatient services and therapeutic aids. *Id.* § 1395k.

The statutes provide for certain periods during which an individual may enroll in Medicare Part B without incurring a premium penalty or surcharge. The first period is the initial enrollment period which "[i]n the case of an individual who first satisfies paragraph (1) or (2) of section 1395o of this title on or after March 1, 1966, ... shall begin on the first day of the third month before the month in which he first satisfies such paragraphs and shall end seven months later." *Id.* § 1395p(d). An additional period, called a special enrollment period (SEP), allows an individual who elected not to enroll during the initial enrollment period to enroll late without a premium surcharge:

(B) In the case of an individual ... who has not attained the age of 65 at the time the individual first satisfies paragraph (1) of section 1395o of this title, is enrolled in a large group health plan as an active individual (as those terms are defined in section 1395y(b)(1)(B)(iv) of this title), and has elected not to enroll (or to be deemed enrolled) under this section

during the individual's initial enrollment period, there shall be a special enrollment period described in paragraph (3)(B).

*Id.* § 1395p(i)(1). This SEP is "the period beginning with the first day of the first month in which the individual is no longer enrolled as an active individual in a large group health plan ... and ending seven months later." *Id.* § 1395p(i)(3)(B).

For the purpose of this SEP, an "active individual" is defined as "an employee ..., the employer, self-employed individual ..., an individual associated with the employer in a business relationship, or a member of the family of any of such persons." *Id.* § 1395y(b)(1)(B)(iv)(I). The term "employee" is defined as one who is currently working or whose "relationship to an employer is indicative of employee status." *Medicare Part B Carriers Manual* HCFA Pub. No. HIM–14–3. If a claimant is not currently working, the issue of whether he is considered an "employee" is based on how "the employer treats a disabled individual who is not working ..., in light of commonly accepted indicators of employee status rather than whether the person is categorized in any particular way by the employer." *Id.* The *Manual* lists certain factors it considers indicative of employee status:

The individual is receiving payments from an employer which are subject to taxes under the Federal Insurance Contributions Act (FICA) or would be subject to such taxes except that the employer is one that is not required to pay such taxes under the Internal Revenue Code.

The individual is termed an employee under State or Federal law or in accordance with a court decision.

The employer pays the same taxes for the individual as he pays for actively working employees.

The individual continues to accrue vacation time or receives vacation pay.

The individual participates in an employer's benefit plan in which only employees may participate.

The individual has rights to return to duty if his/her condition improves.

The individual continues to accrue sick leave.

*Id.* (emphasis added).

Based on her own record, plaintiff became eligible for, and was automatically enrolled in the SMI program [1] under Part B of the Medicare program in April 1978. This was her initial enrollment period, but it ended on July 31, 1978. 42 U.S.C.A. § 1395p(d). She elected to cancel her coverage under Part B because she was covered by her husband's employer's group health plan (EGHP). Coverage under the EGHP continued even after her husband's retirement on October 1, 1980. However, in July 1987, the insurance company for the EGHP "required" that both plaintiff and her husband enroll in Medicare Part B. (Record at 28, 33). Plaintiff re-enrolled in Part B on May 23, 1988. (Record at 39).

If plaintiff's husband ceased being an active individual upon his retirement, plaintiff's SEP would have commenced on October 1, 1980, the date of his retirement, and would have continued until May 31, 1981. (Record at 9). Plaintiff did not, however, re-enroll in the SMI program during this SEP but re-enrolled after her husband's award of disability insurance benefits in July 1987. Her first documented request was on December 7, 1987, and she did not request a reconsideration until June 1988. (Record at 9). Because she did not re-enroll during the SEP, the Secretary assessed a 90 percent premium surcharge. The issue is whether plaintiff's husband ceased being an active individual under 42 U.S.C.A. § 1395p(i)(3)(B) upon his retirement thus triggering the commencement of plaintiff's SEP even though he continued to participate in the EGHP.

I.

Plaintiff has the burden of establishing entitlement to benefits under the Social Security Act. *Blalock v. Richardson*, 483 F.2d 773 (4th Cir.1972) (disability claimant

---

1. Plaintiff was automatically enrolled in Part B after receiving disability insurance benefits for

25 months. 42 C.F.R. §§ 406.5(a)(2); 407.-10(a)(1); 407.12 (1990).

had burden of proving her disability). She, therefore, has the burden of proving that she was entitled to re-enroll without a premium surcharge. Plaintiff has failed to meet this burden. She has submitted no evidence concerning her husband's relationship with his former employer to show that he remained an "active individual" other than the fact that he continued to receive coverage under the EGHP after he retired.

The acknowledgment that plaintiff's husband received health insurance after his retirement is not sufficient to constitute being an "active individual in a large group health plan...." 42 U.S.C.A. § 1395p(i)(3)(B). Therefore, the SEP commenced when plaintiff's husband retired since he was no longer an "active individual," and terminated seven months later. *Id.*

For an individual not currently working, the *Manual's* definition of employee states the issue as "[w]hether the employer treats a disabled individual who is not working as an employee...." *Medicare Part B Carriers Manual* HCFA Pub. No. HIM–14–3 (emphasis added). The *Manual* also provides that whether one is an employee is to be determined "in light of commonly accepted indicators of employee status." The *Manual* defines some of those indicators, for example, if the individual "is receiving payments from an employer which are subject to taxes under the Federal Insurance Contributions Act (FICA) ...," "continues to accrue vacation time or receives vacation pay," "participates in an employer's benefit plan in which only employees may participate," or "has rights to return to duty if his/her condition improves." In addition to the definition of employee itself, these examples contemplate a situation in which an employee may not be currently working but has the right to return to work, such as an injured employee drawing workers' compensation. Contrary to these examples, retirement is not a commonly accepted indicator of employee status. Once an employee retires, he is no longer an employee and does not have the right to return to his former employment. That he may still be eligible to participate in the EGHP does not change

his status to that of an employee or give him the right to return to work. Thus, plaintiff's husband ceased to be "enrolled as an *active individual* in a large group health plan" upon his retirement. 42 U.S.C.A. § 1395p(i)(3)(B) (emphasis added). Plaintiff's SEP, accordingly, began on the date of his retirement and ended 7 months later. *Id.* Therefore, the court finds substantial evidence to support the Secretary's decision on this issue.

## II.

The ALJ ruled that since plaintiff did not re-enroll during her SEP, she was required to pay a premium surcharge. Congress created the surcharge so that those who opt-in to Medicare Part B at a later age, when the risk of higher health costs has increased, will not unfairly benefit at the expense of those who have paid into Medicare Part B for many years. Thus, the ALJ opined it was reasonable for plaintiff to expect to pay higher premiums since she re-enrolled at such a late date. (Record at 9).

As a result of plaintiff's delay in re-enrolling, she is subject to an increase of "10 percent of the monthly premium so determined for each full 12 months (in the same continuous period of eligibility) in which [s]he could have been but was not enrolled." 42 U.S.C.A. § 1395r(b). The length of the delay and thus the amount of the surcharge are computed by:

> [Taking] into account (1) the months which elapsed between the close of his initial enrollment period and the close of the enrollment period in which he enrolled, plus (in the case of an individual who reenrolls (sic.)) (2) the months which elapsed between the date of termination of a previous coverage period and the close of the enrollment period in which he reenrolled (sic.), but there shall not be taken into account months for which the individual can demonstrate that the individual was enrolled in a group health plan described in section 1395y(b)(1)(A)(v) of this title by reason of the individual's (or the individual's spouse's) current em-

ployment or months during which the individual has not attained the age of 65 and for which the individual can demonstrate that the individual was enrolled in a large group health plan as an active individual....

*Id.* § 1395r(b).

The Secretary computed Fields' surcharge according to the first part of this formula and found that since Fields' initial enrollment period expired on July 31, 1978, the computation of the surcharge commenced in August 1978, the first month after the initial enrollment period ended, and expired upon the close of the actual period in which she enrolled, June 1988. Therefore, the Secretary opined the complete period was from August 1978 to June 1988, a total of 119 months, or nine full twelve-month periods, constituting a 90 percent surcharge.

The remaining portion of the section, which states that months for which the claimant was enrolled in an EGHP as a current employee, or was under age 65 and was an active individual enrolled in an EGHP are not included in the computation of the surcharge, is not applicable to plaintiff. This section was an amendment to 42 U.S.C.A. § 1395r(b) in 1984, Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2338, 98 Stat. 494, 1091 (1984), with subsequent amendments in 1986. Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, § 9219, 100 Stat. 82, 182 (1986); Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9319, 100 Stat. 1874, 2012 (1986). The 1984 amendment "shall apply to months beginning with January 1983 for premiums for months beginning with the first month which begins more than 30 days after the date of the enactment of this Act." Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2338, 98 Stat. 494, 1093 (1984). Thus, a claimant can deduct the months going back to January 1983, which deduction would then only affect premiums for the months beginning 30 days after the enactment date of July 18, 1984. However, to deduct the months back to January 1983, plaintiff must have been enrolled at that time in an EGHP because of her or her husband's current employment or be under 65 and enrolled as an active individual in an EGHP. Plaintiff ceased fulfilling these requirements at the time of her husband's retirement on October 1, 1980, long before January 1983. Therefore, there is substantial evidence to support the Secretary's computation of the amount of the premium surcharge.

### III.

Plaintiff also claims that she "fe[lt she] was not advised properly of the penalty when [she] was first eligible for Part B and cancelled it." (Record at 33). She does not, however, state who improperly advised her. She does not allege that her non-enrollment was "unintentional, inadvertent, or erroneous and is the result of the error, misrepresentation, or inaction of an officer, employee, or agent of the Federal Government, or its instrumentalities...." 42 U.S.C.A. § 1395p(h). Therefore, no relief from the imposed penalty is available under these sections.

For the reasons stated, the court finds that the Secretary's decision that plaintiff is subject to a premium surcharge because she failed to re-enroll during her SEP which commenced upon her husband's retirement is supported by substantial evidence. Likewise, the Secretary's computation of the premium surcharge as 90 percent is supported by substantial evidence and must also be affirmed.