**1.** At the time Plaintiff filed his Complaint [Docket No. 1], Michael O. Leavitt served as the Secretary of Health and Human Services and was the named Defendant. At the time Magistrate Judge Arthur Boylan issued his Report and Recommendation, Charles E.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

**Charles DEGNAN, Plaintiff,**

v.

**Kathleen SEBELIUS, Secretary of Health and Human Services,[1] Defendant.**

**Civil No. 08–325 ADM/AJB.**

United States District Court, D. Minnesota.

Sept. 28, 2009.

Johnson served as the Acting Secretary of Health and Human Services and was the named Defendant. Kathleen Sebelius is the current Secretary of Health and Human Services and is now the named Defendant.

Charles Degnan, pro se.

Lonnie F. Bryan, Assistant United States Attorney, Minneapolis, MN, for Defendant.

### MEMORANDUM OPINION AND ORDER

ANN D. MONTGOMERY, District Judge.

### I. INTRODUCTION

Plaintiff Charles Degnan ("Plaintiff") challenges the Secretary of Health and Human Services' ("Defendant") determination of Plaintiff's monthly Medicare Part B premiums. This matter is before the undersigned United States District Court Judge for a ruling on Defendant's Objections [Docket No. 34] to Magistrate Judge Arthur J. Boylan's Report and Recommendation ("R & R") [Docket No. 28]. The R & R recommends Plaintiff's Motion for Summary Judgment [Docket No. 20] be granted in part and denied in part and that Defendant's Cross Motion for Summary Judgment [Docket No. 24] be granted in part and denied in part. For the reasons stated below, Defendant's Objections are overruled and the R & R is adopted. The procedural and factual background described in the R & R are incorporated by reference.

### II. DISCUSSION

#### A. Standard of Review

A district court must make an independent, de novo review of those portions of an R & R to which a party objects and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. LR 72.2(b).

The parties agree that there are no disputed facts and that the only issue is a question of statutory interpretation. Statutory interpretation begins with the language of the statute. *See Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (when the statute's language is plain, courts must enforce it according to its terms). When the language of a statute is clear, the inquiry ends, and a court need not defer to a federal agency's contrary interpretation of the statutory scheme. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778,

81 L.Ed.2d 694 (1984); *Horras v. Leavitt,* 495 F.3d 894, 900 (8th Cir.2007). If the language of the statute is ambiguous or silent, the issue for the court is whether the agency's interpretation of the statute is a reasonable one. *Smiley v. Citibank, N.A.,* 517 U.S. 735, 744–45, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996).

## B. Defendant's Objections

Defendant objects to Judge Boylan's statutory interpretation of 42 U.S.C. § 1395r and to his conclusion that § 1395r does not distinguish between a premium and a penalty. Objections at 1. Section 1395 provides, in relevant part:

(a) Determination of monthly actuarial rates and premiums

(1) The Secretary shall, during September of 1983 and of each year thereafter, determine the monthly actuarial rate for enrollees age 65 and over which shall be applicable for the succeeding calendar year.

(2) The monthly premium of each individual enrolled under this part for each month after December 1983 shall be the amount determined under paragraph (3), adjusted as required in accordance with subsections (b), (c), (f), and (i) of this section and to reflect any credit provided under section 1395w–24(b)(1)(C)(ii)(III) of this title.

(3) The Secretary, during September of each year, shall determine and promulgate a monthly premium rate for the succeeding calendar year that (except as provided in subsection (g) is equal to 50 percent of the monthly actuarial rate for enrollees age 65 and over, determined according to paragraph (1), for that succeeding calendar year.

. . . .

(b) Increase in monthly premium

In the case of an individual whose coverage period began pursuant to an enrollment after his initial enrollment period

(determined pursuant to subsection (c) or (d) of section 1395p of this title) and not pursuant to a special enrollment period under section 1395p(4) of this title, the monthly premium determined under subsection (a) of this section (without regard to any adjustment under subsection (i) of this section) shall be increased by 10 percent of the monthly premium so determined for each full 12 months (in the same continuous period of eligibility) in which he could have been but was not enrolled. . . .

(c) Premiums rounded to nearest multiple of ten cents

If any monthly premium determined under the foregoing provisions of this section is not a multiple of 10 cents, such premium shall be rounded to the nearest multiple of 10 cents.

. . . .

(f) Limitation on increase in monthly premium

For any calendar year after 1988, if an individual is entitled to monthly benefits under section 402 or 423 of this title . . . . for November and December of the preceding year, if the monthly premium of the individual under this section for December and for January is deducted from those benefits under section 1395s(a)(1) . . . of this title, and if the amount of the individual's premium is not adjusted for such January under subsection (i) of this section, the monthly premium otherwise determined under this section for an individual for that year shall not be increased, pursuant to this subsection, to the extent that such increase would reduce the amount of benefits payable to that individual for that December below the amount of benefits payable to that individual for that November (after the deduction of the premium under this section).

The parties agree that neither subsection (i) nor section 1395w–

24(b)(1)(C)(ii)(III) apply to Plaintiff's monthly premium. Report at 16. Therefore, Plaintiff's monthly premium is the amount determined under paragraph (3), adjusted as required in accordance with subsections (b), (c), and (f).

Judge Boylan concluded the ALJ's statutory interpretation resulted in an incorrect calculation of Plaintiff's Medicare Part B premiums beginning in 2004 and continuing in subsequent years. In calculating Plaintiff's premium, the ALJ relied on the statute, the agency regulations relating to those provisions, 42 C.F.R. §§ 408.20–22, and sections of the Federal Register from 2006, 1989, 1987, and 1986. R & R at 7. Using these sections as his guide, the ALJ determined the monthly premium set by Defendant under paragraph (a)(3) was $58.70, $66.60, $78.20, and $88.50 for the years 2003, 2004, 2005, and 2006 respectively. *Id.* at 11. The ALJ then found that, pursuant to subsection (f), Plaintiff's yearly premium was adjusted so as not to exceed the Cost of Living Adjustment for the applicable year. *Id.* at 9. As a result, the ALJ announced that Plaintiff's premiums, as adjusted pursuant to subsection (f), were $58.70, $62.60, $67.20, and $75.50 for the years 2003, 2004, 2005, and 2006 respectively. *Id.* at 5. The ALJ further determined that, pursuant to subsection (b), the premiums for each year increased by 40% (a 10% increase for each of the 4 full 12 month periods in which Plaintiff could have been but was not enrolled) of the premium announced by Defendant under paragraph (a)(3), resulting in a total monthly premium of $82.20, $89.20, $98.50, and $110.90 in years 2003, 2004, 2005, and 2006. *See id.* at 9. Plaintiff's gross social security old age insurance ("OAI") monthly retirement benefits were $186.70, $190.60, $197.80, and $210.90 in 2003, 2004, 2005, and 2006. *Id.* at 5, 19. Deducting the premiums, the ALJ's calculations resulted in a net OAI benefit to Plaintiff of $104.50, $101.40, $99.30, and $100.00 in 2003, 2004, 2005, and 2006.

Judge Boylan determined that the ALJ's calculation effectively rendered inoperative the portion of subsection (f) which refers to the limit on monthly increases because the ALJ calculated subsection (b) without regard to that segment of subsection (f). In other words, the ALJ calculated the adjusted premium determined under subsection (f) and then, pursuant to subsection (b), added 40% of the premium set by Defendant under paragraph (a)(3). *Id.* at 20. By calculating the premium using this method, Judge Boylan reasoned, the ALJ ignored the language of subsection (f), which provides that "the monthly premium otherwise determined under this section for an individual for that year shall not be increased, pursuant to this subsection, to the extent that such increase would reduce the amount of benefits payable to that individual for that December below the amount of benefits payable to that individual for that November (after the deduction of the premium under this section)." *Id.* Judge Boylan concluded that the plain language of the statute requires that the 40% increase in the premium under subsection (b) should be limited by the application of subsection (f). *Id.* Therefore, while Plaintiff's monthly premiums may increase pursuant to the annual amount set by Defendant under subsection (a)(3) and pursuant to the increase in monthly premium in subsection (b), Plaintiff's net OAI benefit after both the adjustments required by subsections (b) and (f) may not be reduced below $104.50. *Id.* at 18, 19.

Defendant argues that the language in subsection (f) should be read as limiting the ability to raise the premium under subsection (a) and not as limiting the extent to which subsection (b) may result in increased premiums. Objections at 4. Defendant urges that subsection (a)(2) pro-

vides for the adjustment of the basic premium amount determined by subsection (a) through subsection (b) or subsection (f), but does not require that the monthly premium determined under subsection (a)(3) first be adjusted under subsection (b) and then further adjusted under subsection (f). Objections at 5. Defendant further argues that subsections (b), (f), and (i) are referred to and described in the statute as distinct provisions, each to be determined on its own, without regard to other adjustments. *Id.* at 5.

At issue here is whether subsection (f) is a limitation only on Defendant's ability to increase an individual's premium pursuant to subsection (a) or whether subsection (f) is also a limitation on the increase in monthly premium due to late enrollment under subsection (b). As a starting point for analysis, the title of subsection (f) is "Limitation on increase in monthly premium" and the title of subsection (b) is "Increase in monthly premium." The titles themselves of the two subsections imply subsection (f) is meant to limit the effect that the application of subsection (b) can have on the amount of an individual's monthly premium. As Judge Boylan noted, subsection (b) uses the language "increase in monthly premium" and does not use the language "penalty" or "surcharge." *Expressio unius est exclusio alterius* is a fundamental principle of statutory construction that the express designation of one thing may be properly construed to mean the exclusion of others not expressed. *Watt v. GMAC Mortg. Corp.,* 457 F.3d 781, 783 (8th Cir.2006). Mindful of this principle, any increase pursuant to subsection (b) is properly thought of as an increase in the amount of the premium, not a penalty or late fee. Defendant argues that the word "penalty" is used in subsection (h) and in recent legislation, and therefore, referring to the increase pursuant to subsection (b) as a "penalty" is permissible. Objections at 5–6. As the

Supreme Court observed, "[w]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005). The use of the word "penalty" in subsection (h) and its absence in all of subsection (b) lends support for the conclusion that the increase pursuant to subsection (b) is an increase in the premium and not a penalty or surcharge that should be added to the premium.

In accordance with subsection (f), "the monthly premium otherwise determined under this section for an individual for that year shall not be increased, pursuant to this subsection, to the extent that such increase would reduce the amount of benefits payable to that individual for that December below the amount of benefits payable to that individual for that November (after the deduction of the premium under this section)." This language dictates that Plaintiff's net benefit check in November and December of each year must remain the same, and therefore, the premium cannot be raised in an amount that would cause Plaintiff's net benefit check to decrease.

Given the plain language of the statute, Judge Boylan correctly calculated Plaintiff's premiums and his net benefit amounts. Report at 17–20. Judge Boylan properly enforced the statute according to its terms.

Having found that the plain language of the statute required a different calculation than that used by the ALJ, Judge Boylan did not reach the issue of whether the agency's interpretation of the statute was a reasonable one. *Id.* at 20. However, Judge Boylan did note that the legislative

and regulatory history supported Plaintiff's argument that the 1984 version of the statute, which expressly directed the agency to disregard subsection (b) when calculating subsection (f), was displaced by amendments to § 1395r contained in the Medicare Catastrophic Coverage Act of 1988, Pub.L. 100–360, § § 211(b), (d), 102 Stat. 638, 738–39 (1988) (MCCA), which made no such reference. *Id.* at 20.

Defendant concedes that the 1988 amendment to subsection (f) removed six references to disregard subsection (b) and changed the premium calculation from the "amount determined under subsection (a)(2)" to "the monthly premium otherwise determined under this section." Objections at 10. For the first time during Plaintiff's appeal process, Defendant argues that a conforming amendment added to subsection (b) required that subsection (f) be disregarded when calculating subsection (b), thereby allowing the monthly increase in the premium pursuant to subsection (b) to be added to the adjusted premium pursuant to subsection (f). Objections at 10. The pertinent language of the conforming amendment is as follows:

> (b) In the case of an individual whose coverage period began pursuant to an enrollment after his initial enrollment period (determined pursuant to subsection (c) or (d) of section 1395p of this title), the monthly premium otherwise determined under this section (without regard to subsections (f) and (g)(6)) shall be increased by 10 percent of the monthly premium so determined for each full 12 months (in the same continuous period of eligibility) in which he could have been but was not enrolled.

Pub. L. 100–360, § 211(c)(1)(E), 102 Stat. 683, 738 (1988).

Defendant argues that this language supports the position that no change was intended with respect to the interaction between subsections (b) and (f). Objections at 11. However, subsection (b) refers to the increase in monthly premium. The plain language of subsection (b) requires the increase to be calculated "without regard to subsections (f) and (g)(6)." This is not the same as calculating the monthly premium pursuant to subsection (f) and then adding the increase in monthly premium pursuant to subsection (b). While the premium *increase* may be calculated "without regard" to subsection (f), the monthly premium as defined in subsection (a)(2) remains "the amount determined under paragraph (3), adjusted as required in accordance with subsections (b), (c), (f) and (i) of this section...."

By way of example, in 2004, the premium set by Defendant under paragraph (a)(3) for January 2004 was $66.60. The increase in monthly premium pursuant to subsection (b), determined without regard to subsection (f), was $26.60 (40% of the premium rounded to the nearest multiple of 10 cents, pursuant to subsection (c)). Plaintiff's net benefit check in November 2003 would have been $104.50,[2] and his net benefit check in December 2003 would have been $97.40.[3] But under subsection (f), his net benefits could not fall below $104.50, and, thus, his premium amount could only be increased to $86.10.

In 1989, portions of the MCCA were repealed, including the conforming amendment to subsection (b), but the "hold harm-

---

**2.** $104.50 is Plaintiff's gross benefits minus the total of the standard premium announced by Defendant plus the monthly increase for late enrollees (determined without regard to subsection (f)) or $186.70–($58.70 + 23.50) = $104.50.

**3.** $97.40 is Plaintiff's gross benefits minus the total of the standard premium announced by Defendant plus the monthly increase for late enrollees (determined without regard to subsection (f)) or $190.60–($66.60 + 26.60) = $97.40.

less provision," subsection (f), was retained. *Id.* at 11–12. Defendant argues that the failure to retain the conforming amendment was an "oversight." *Id.* at 12 n. 8. Defendant fails, however, to provide any evidence to support that assertion. Nevertheless, even if Defendant were correct, and Congress intended to retain the conforming amendment, as previously discussed, its language does not support Defendant's argument that the increase in monthly premium under subsection (b) should not be limited by subsection (f).

In Plaintiff's Response to Defendant's Objections, he asks for the first time that the Court decline to dismiss the Commissioner of Social Security as a defendant. Local Rule 72.2 requires a party to serve and file objections to the Magistrate Judge's order within 10 days after being served with a copy of the order; a party's failure to timely object precludes that party from assigning as error a defect in the Magistrate Judge's order. Accordingly, Plaintiff's request for relief is denied. Plaintiff also urges that the new arguments made by Defendant in its Objections support Plaintiff's due process claim and class relief for all Medicare Part B enrollees. These additional claims are not properly before the Court. Therefore, Plaintiff's requests for relief are denied.

### III. ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections [Docket No. 34] are **OVERRULED;**

2. The R & R [Docket No. 28] is **ADOPTED;**

3. Plaintiff's Motion for Summary Judgment [Docket No. 20] is **GRANTED IN PART AND DENIED IN PART;**

4. Defendant's Motion for Summary Judgment [Docket No. 24] is **GRANTED IN PART AND DENIED IN PART;** and

5. The matter is remanded to Defendant for calculation of Medicare Part B premiums beginning in the year 2004, and each subsequent year, consistent with the processed explicated in the R & R.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

### Report and Recommendation on Cross Motions for Summary Judgment

ARTHUR J. BOYLAN, United States Magistrate Judge.

### I. *Introduction*

Charles Degnan ("Plaintiff") disputes the unfavorable decision of the Secretary of Health and Human Services ("Secretary") affirming the ALJ's statutory interpretation of 42 U.S.C. § 1395r(f). This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to the District Court on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1) and Local Rule 72.1. This Court has jurisdiction under the Medicare Act, 42 U.S.C. § 1395(ff).[1] Based on the

---

1. Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a "final decision" on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act. *Heckler v. Ringer,* 466 U.S. 602, 605, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (citing 42 U.S.C. § 1395ff(b)(1)). 42 U.S.C.

§ 1395ff(b)(1), appeal rights in general, provides in pertinent part:

(A) Reconsideration of initial determination.

... any individual dissatisfied with any initial determination under subparagraph (a)(1) shall be entitled to reconsideration of the determination, and, subject to para-

reasoning set forth below, this Court **recommends** that Plaintiff's Motion for Summary Judgment [Docket No. 24] be **granted in part and denied in part** and that Defendant's Motion for Summary Judgment [Docket No. 20] be **granted in part and denied in part.**

## A. *Statutory Framework and Procedural History*

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, established the Medicare program. Medicare Part A provides hospital related insurance for individuals, primarily those over the age of 65, and is financed by the payroll contributions of employees and employers. *See* 42 U.S.C. § 1395c–1395i–4. Anyone entitled to Medicare Part A, or who is age 65 or older, may enroll in Medicare Part B. 42 U.S.C. § 1395*o*. Medicare Part B, which is called supplementary medical insurance "SMI," is an elective or "voluntary insurance program" which is "financed from premium payments by enrollees" in addition to federal government appropriations. 42 U.S.C. § 1395j. In other words, Part B "resembles a private medical insurance program that is subsidized in major part by the Federal Government." *Schweiker v. McClure*, 456 U.S. 188, 190, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982).

An individual who is eligible for Part B benefits may enroll in the program during a "initial enrollment period." 42 C.F.R. § 407.14(a). An initial enrollment period will begin three months before the month in which the individual becomes eligible for Part B benefits, and will end three months after that first month of eligibility. *Id.* An enrollment application filed during the initial enrollment period will be effective during the first month of eligibility, or at some time over the next six months, depending on when the application is filed. 42 C.F.R. § 407.25(a).

If an individual fails to enroll during the initial enrollment period she may also enroll or re-enroll during a "general enrollment period." 42 C.F.R. § 407.12(a). A general enrollment period will extend from January 1 through March 31 of each calendar year. 42 C.F.R. § 407.15. An enrollment application filed during this time will be effective on July 1 of that calendar year. 42 C.F. R. § 407.25(b)(1).

The Secretary sets a new premium for each year. 42 U.S.C. § 1395r(a)(3). This premium is subject to various increases or decreases under other subsections of the statute. 42 U.S.C. § 1395(a)(2). An individual who enrolls or re-enrolls after the expiration of her initial enrollment period pays a premium increase of "10% of the monthly premium so determined for each of the full twelve months . . . in which he could have been but was not enrolled." 42 U.S.C. § 1395r(b). This subsection reflects Congress' concern that "those who opt-in to Medicare Part B at a later age, when the risk of higher health costs has increased, will not unfairly benefit at the expense of those who have paid into Medicare Part B for many years." *Fields v.*

graphs (D) and (E), a hearing thereon by the Secretary to the same extent as provided in section 405(b) of this title, subject to paragraph (2), to judicial review of the Secretary's final decision after such hearing as *is provided in section 405(g) of this title* [judicial review of Social Security decisions]. For purposes of the preceding sentence, any reference to the "Commissioner of Social Security" or the "Social Security Administration" in subsection (g) or (*l*) of section 405 of this title shall be considered a reference to the "Secretary" or the "Department of Health and Human Services," respectively.

Therefore, the Secretary of Health and Human Services is the only proper defendant, and Michael J. Astrue, Commissioner of Social Security should be dismissed as a defendant.

*Sullivan,* 789 F.Supp. 739, 742 (W.D.Va. 1992).

Subsection (f) of the statute operates to limit monthly premium increases "to the extent that such increase would reduce the amount of benefits payable to that individual for that January below the amount of benefits payable to that individual for that December (after the deduction of the premium under this section). 42 U.S.C. § 1395(f). Subsection (f) reflects Congress' concern that Medicare Part B costs (thus, the premiums charged) are increasing at a higher rate than cost of living adjustments to social security retirement benefits, from which the Medicare Part B premiums are deducted. *See* Jim Hahn, MEDICARE: PART B PREMIUMS at 6–9, Congressional Research Service, 7–5700, December 29, 2008 (describing history of Part B Premium).

In this case, Plaintiff's initial enrollment period closed on April 30, 1998. (Complaint ¶ 5 Docket No. 1) (hereinafter "Compl.") However, Plaintiff did not enroll in Medicare Part B until July 2003. (*Id.* at ¶¶ 5–6). Pursuant to 42 U.S.C. § 1395r(b), the amount of Plaintiff's premium increase in his first year of enrollment was 40% because four full 12–month periods elapsed between when Plaintiff could have enrolled and when he actually enrolled for Part B benefits. (*Id.* at ¶ 5). Generally, the issue presented is how Plaintiff's 40% increase pursuant to subsection (b) is calculated when considered together with subsection (f), which places certain limits on premium increases.

Plaintiff wrote a letter to the SSA regarding his retirement benefits in April 2004, stating he did not believe his benefits should go down "because of the Medicare." (Tr. 305). The SSA responded that,

> The base rate of the premium has been reduced, however, you are subject to a 40% penalty for late enrollment and that is not adjusted to protect your benefits.

In June 2003, your benefit amount was $186.70 and the [Medicare Part B] premium was $58.70. The penalty was $23.50. If you would have had no penalty, you would have received $128.00. The next year, your benefit went up to $190.60 and the premium went up to $66. 60. If you would have had no penalty, your check would have been for $124.00. We reduced the base of the premium to $62.60, but you still owe the 40% penalty amounting to $26.60 so we have to charge you $89.20 for your Medicare and your net payment goes down because of the penalty.

Again, this year, your benefit went up to $197.80 and the premium went up to $78.20. Since we round the extra dimes down, you would have received only $119.00 so we reduced the based premium down from $78.20 to $67.20. However, you still owe a 40% penalty on the $78.20 or $31.30 so we have to charge you $98.50 for your Medicare and your net payment will go down.

(Tr. 305–07).

Plaintiff received Notices of Change in Benefits from the Social Security Administration in September 2005, and January 2006, notifying Plaintiff of the withholding from his check. Thereafter, the SSA found an error in its previous calculation and informed Plaintiff that his "premium rate should go down, however, you are still subject to the 40% penalty for late enrollment. We will refund the $59.00 we withheld from your check. Your premium rate for medical is $110.90." (Tr. 285–86). Although the letter is undated, it appears that the SSA found another mistake, resulting in Plaintiff being overpaid $59.00. (Tr. 293). Plaintiff was later notified that his premiums were correct, and his monthly benefit checks, beginning in April 2006, would be for $100.00. (Tr. 282–84).

Plaintiff responded that the issue he raised on appeal regarding "nonstandard premium increases to the premium surcharges for late-enrollees ..." had not been addressed. (Tr. 288). Plaintiff noted that he had received no response to two Requests for Reconsideration. (*Id.*) After SSA declined Plaintiff's requests, he appealed to an SSA Administrative Law Judge ("ALJ") on June 15, 2006. (Tr. 252). ALJ William S. Steele held a hearing on August 25, 2006 (Tr. 342–367), and issued a unfavorable decision to Plaintiff on December 14, 2006. (Tr. 50–66).

On February 17, 2007, Plaintiff filed a "Request for Review of Administrative Law Judge (ALJ) Medicare Decision/Dismissal" with the Department of Health and Human Service's Appeals Board. (Tr. 26). Due to its inability to obtain the administrative record, the Medicare Appeals Council ("MAC") vacated the ALJ's prior decision and remanded the case to the ALJ on May 9, 2007. (Tr. 232). The ALJ was given the option to continue efforts to retrieve the original record. (Tr. 232). If the complete record could not be obtained, the ALJ was instructed to either reconstruct the record, develop a new record, or hold a *de novo* hearing. (Tr. 232). After the record was reconstructed, the ALJ issued an amended decision on July 26, 2007, which is summarized below in Section II.B. (Tr. 214–230). On October 19, 2007, the MAC denied Plaintiff's request for review and noted that the ALJ's decision was the final decision of the Secretary. (Tr. 3–6).

Plaintiff then wrote a letter to the MAC, which was construed as a request for reopening. (Tr. 7–8, 14–18); *see also* 20 C.F.R. § 404.987–88. By letter dated January 3, 2008, the MAC found no basis for reopening its October 19 decision, and

again stated that said decision stood as the final decision of the Secretary. (Tr. 7). The Council also extended the time for Plaintiff to file an action in federal court seeking review of its decision. (Tr. 8). On February 6, 2008, Plaintiff filed this action. Plaintiff's Complaint is summarized below in Section II.C.

## B. The ALJ's July 26, 2007 Amended Decision

The ALJ framed the issue before him as follows: "Is an individual who suffers a surcharge/penalty for late enrollment to Medicare Part B susceptible to Part B premium increases which, when combined, exceeds the COLA payment increase, thereby reducing his monthly payment?" (Tr. 215.) The ALJ concluded:

> The Appellant experienced a decrease in his monthly benefits as a result of the addition of the applicable 40% penalty to the increase in his Medicare Part B premium (as adjusted to not exceed COLA). The decrease in monthly benefits was not due to an increase in the monthly premium exceeding the COLA. The decrease is directly related to the Appellant's 40% penalty.

(Tr. 216).

Before explaining his analysis, the ALJ set forth the pertinent provisions of the statute, 42 U.S.C. § 1395r(a),(b), (c) and (f), and the agency regulations relating to those provisions, 42 C.F.R. §§ 408.20–22, as well as sections of the Federal Register from 2006, 1989, 1987, and 1986 [2] that pertain to the statute and regulations. (Tr. 217–226). The ALJ also quoted the following definitions:

*Glossarywww.medicare.gov*

---

2. The ALJ cited 71 Fed. Reg. 54665–67 (September 18, 2006); 54 Fed. Reg. 43862 (October 27, 1989); 52 Fed. Reg. 36716 (September 30, 1987); and 51 Fed. Reg. 35291–01 (October 2, 1986).

PREMIUM—The periodic payment to Medicare, an insurance company, or a health care plan for health care or prescription drug coverage.

PENALTY—An amount added to your monthly premium for Medicare Part B, or for a Medicare Prescription Drug Plan, if you don't join when you're first able to. You pay this higher amount as long as you have Medicare. There are some exceptions.

*Webster's New World Dictionary and Thesaurus*

Surcharge—a) an additional amount added to the usual charge.

(Tr. 226).

The ALJ began his analysis:

The Appellant claims immunity from any increase to the surcharge/penalty (hereinafter interchangeable as determined by definition ...) after his 2003 enrollment under subsection (f) of § 1839 of the Act's limit of *total* premium increases to no more than that year's Cost of Living Adjustment (COLA) benefits ... [Emphasis Added]. A Letter from the Social Security Administration (SSA) dated September 15, 2005 states the 40% penalty applicable to the Appellant for late enrollment is not adjusted to protect his benefits ... The base rate of the premium has been reduced ... Section 1839(f) of the Act does not state the limit on SMI increases is a limit of total premium increases. *See* 1839(f) of the Act [42 U.S.C. § 1395r]. Individuals who have enrolled in Part B late or who have reenrolled after the termination of a coverage period are subject to an increased premium under section 1839(b) of the Act. *The increase is a percentage of the premium and is based on the new premium rate before any reductions under section* 1839(f) of the Act are made ... Section 1839(a)(2) of the Act clarifies the calculation of the premium by stating "the monthly premi-

um of each individual enrolled under this part for each month after December 1983 shall be the amount determined under paragraph (3) adjusted as required in accordance with subsections (b), (c), (f), and (i) of this section." ... [footnotes and citations omitted.]

(Tr. 227). Plaintiff had argued that in 2006 the Medicare website indicated "by law, the Part B premium increase cannot be larger than a beneficiary's COLA increase." In response, the ALJ stated, "[t]he definition of a premium does not include any penalty assessed for late enrollment. (Tr. 227). The ALJ cited to the definition of "premium" found on the Medicare website. (Tr. 227). The ALJ also reasoned that "the monthly premium and the penalty are two distinct elements of the Part B premium, they are equally addressed in separate subsections of § 1839. (Tr. 228).

The ALJ explained Plaintiff's situation as follows:

In this case, the Appellant's monthly benefit was in fact reduced. However, that reduction was not the result of the yearly premium increase to the Part B premium. The Appellant's premium increase was reduced so as not to exceed the COLA increase for the applicable year. The Appellant's premiums ($66.60 for 2004, $78.20 for 2005, and $88.50 for 2006) were adjusted to not exceed the COLA and his monthly benefit further adjusted in accordance with subsection (b) of § 1839 to adequately reflect the beneficiary's penalty for late enrollment ... The Appellant argues the applicable penalty should only be $23.50 (the standard penalty as first applied in June 2003) and should be immune from any subsequent increases to the surcharge under the hold-harmless provision of Section 1839 of the Act ... However, the penalty for late enrollment is not governed by subsection (f) of § 1839.

(Tr. 228). The ALJ cited the agency regulation at 42 C.F.R. § 408.20(e)(6), for the proposition that penalties are excluded from the limit on premium increases. (Tr. 229). The ALJ concluded that to ignore the "intent of the limited application of the hold-harmless provision ... would make the application of a penalty obsolete and result in the unfair implementation of non-penalty Part B premiums for those who did not enroll on time," and "to allow those who enrolled late to the same benefits of a premium limitation, including a reduction to the amount of the penalty, would effectively result in the absence of a penalty." (Tr. 229–30). Thus, the ALJ held that subsection (f) of 42 U.S.C. § 1395r does not apply to late enrollment penalties. (Tr. 230).

### C. *The Complaint*

Plaintiff enrolled in Medicare Part B, fifty-nine months after his initial enrollment period, which closed on April 30, 1998. *Compl.* ¶ 5. On July 1, 2003, Plaintiff became eligible for withholding of his Medicare Part B premium from his social security retirement benefits [hereinafter "OAI or OASDI benefit"]. (*Id.* at ¶ 6.) The monthly premium announced by the Department for new enrollees that year was $58.70. (*Id.*) In addition, Plaintiff paid $23.50 "as the forty percent increase for late enrollment pursuant to subsection 1839(b), for a total withheld premium of $82.50 and a net OAI benefit of $104.00, after rounding benefit cents down to the next lower dollar as prescribed in the Act. " (*Id.*) Plaintiff asserts that in each January of the years 2004 through 2006, the lesser of the respective year's standard increase to the [Medicare Part B] premium or an amount equal to Plaintiff's cost-of-living adjustment ... for the same year were withheld from his OAI benefits as directed in 42 U.S.C. § 1395r(f). (*Id.* at ¶ 7). Additionally, forty percent of the respective years' standard monthly premium increase was withheld as an adjustment for Plaintiff's late enrollment, pursuant to 42 U.S.C. § 1395r(b), even though, each year, this reduced "Plaintiff's OAI, net of withheld premium, from what had been paid in the next previous month (the December payment of that year's November-accrued benefit.)" (*Id.*)

Plaintiff asserts that the increases to the premium promulgated by the Secretary for the years 2007 and 2008, plus the forty percent adjustment for his late enrollment, have not exceeded his respective COLA's for those years, so the withholding of the "full standard increases to [Medicare Part B] base and late-charge premiums have not in these years caused reduction in his net OAI due to these increases ... However, the reductions built into his premium from the three prior years carry forward and still cause the monthly premium withheld in 2007 and 2008 to exceed by $11.92 what would have been collected but for those earlier deductions to net OAI." (*Id.* at ¶ 8).

Plaintiff set forth the following table in Paragraph 9 of the Complaint:

| | Base Premium Amount: | | | | 40% Late Enrollment Premium | | | |
| | (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) |
| Year | Yr To Standard | Yr Increase | Yr To Variable | Yr Increase | Yr To Standard | Yr Increase | Yr To Variable | Yr Increase |
| 2003 | $58.70 | na | na | na | $23.50 | na | na | na |
| 2004 | 66.60 | 7.90 | 62.60 | 3.90 | 26.66 | 3.16 | 23.50 | 0.00 |
| 2005 | 78.20 | 11.60 | 67.20 | 4.60 | 31.30 | 4.64 | 23.50 | 0.00 |
| 2006 | 88.50 | 10.30 | 75.50 | 8.30 | 35.40 | 4.12 | 23.50 | 0.00 |
| 3–yr totals | | 29.80 | | 16.80 | | 11.92 | | 0.00 |

| 2007 | 93.50 | 5.00 | 80.50 | 5.00 | 37.40 | 2.00 | 25.50 | 2.00 |
| 2008 | 96.40 | 2.90 | 83.40 | 2.90 | 38.56 | 1.16 | 26.66 | 1.16 |

Plaintiff asserted the correct increase to his late-enrollment premium in each of the years 2004–2006 was zero. (Compl. ¶ 10.) Thus, Plaintiff concluded, the total unlawful charges "built into and remaining in Plaintiff's premium from those three years are $11.92 per month." (*Id.*) According to Plaintiff, the correct monthly adjustments for his late-enrollment are listed in column (g) of the above table, in contrast with the late adjustment actually withheld, as shown in column (e). (*Id.*)

Plaintiff noted that the MAPSC, when interpreting the statute, cited Public Law 980–369, Section 230, July 18, 1984, a version of the relevant statute that was in effect in 1984, but was significantly amended in 1988. (Compl. ¶ 12). The significance of this, Plaintiff asserted, is that in 1984 the statute contained six "disqualifying references to charges under subsection 1839(b) of the Act ... [late enrollment premium increase]" and "replacement of the phrase 'the monthly premium amount determined under subsection (a)(2) ...' in the original with '... the monthly premium otherwise determined under this section ...' in its replacement." (*Id.*) Plaintiff asserted that those two statutory changes made up the core of the issue in his administrative appeals, which was never acknowledged at any level of agency review. (Compl. ¶ 14).

Plaintiff noted that, in affirming MAPSC's ruling, the ALJ cited 42 C.F.R. § 408.20(e)(6), and other extracts from the Federal Register and the Commissioner's Program Operations Manual System "POMS" to the same effect as the regulation. (*Id.* at ¶ 13). The crux of Plaintiff's statutory interpretation argument appears in Paragraph 15 of the Complaint:

> The Secretary's regulation in 42 C.F.R. 408.20(e)(6) took its present form in January 1988, over five months before enactment of the [1989 changes to 1839 subsection (f)] and its text has never been changed thereafter. When adopted, it did conform to the version of subsection (f) then in force, but became invalid on January 1, 1989, when the [1989] changes took effect. It and all subsequent Federal Register notices or POMS extracts of like import patterned after it are likewise invalid after 1988 as violative of subsection 1839(f).

Plaintiff's second claim in the Complaint is that the Commissioner has so unreasonably delayed, and inadequately rendered, the processing of Plaintiff's appeals as to violate Plaintiff's rights to administrative due process of law. (Compl. ¶ 16). Plaintiff cited to delays in responding to his requests for reconsideration, and lack of acknowledgment of the issues he raised. (*Id.*) Plaintiff also alleged the Medicare Office of Hearings and Appeals in Cleveland, Ohio "COMHA" and the MAC violated his administrative due process rights. (*Id.* at ¶ 17.) In support of this allegation, Plaintiff alleged COMHA omitted certain records Plaintiff submitted for inclusion in the record of the ALJ hearing, and his local social security office lost hearing exhibits shipped to them upon entry of the ALJ's decision. (*Id.*) Plaintiff also alleged MAC accepted a reconstructed file from COMHA that did not include any certification as to the authenticity of the reconstructed file. (*Id.*) On this basis, Plaintiff petitioned MAC for a rehearing before the ALJ with a new list of exhibits to be included. (*Id.*) Plaintiff's request for rehearing was denied. (*Id.*)

Plaintiff's Prayer for Relief goes beyond the standard request to reverse the ALJ's decision. In paragraphs 19–23 of the Complaint, Plaintiff requested declaratory judgment type relief (Compl. ¶¶ 20–21), in-

junctive type relief (Compl. ¶¶ 22–23) and class-wide relief (Compl. ¶ 22).

## II. *Discussion*

### A. *Standard of Review*

The familiar standard of review for social security and medicare appeals is that the reviewing court should affirm if the factual findings of the Secretary [or Commissioner] are supported by substantial evidence on the record as a whole. *Horras v. Leavitt*, 495 F.3d 894, 899–900 (8th Cir.2007) (citing 42 U.S.C. § 1320a–7a(e)); *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir.2003). However, in this case the parties agree that there are no facts in dispute. Plaintiff exclusively presents a legal issue of statutory interpretation. Statutory interpretation begins with the plain language of the statute. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (when statute's language is plain, courts must enforce it according to its terms). When the language of a statute is clear, the inquiry ends, and a court need not defer to a federal agency's contrary interpretation of the statutory scheme. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Horras*, 495 F.3d at 900. If the language of the statute is ambiguous or silent, the issue for the court is whether the agency's interpretation of the statute is a reasonable one. *Smiley v. Citibank, N.A.*, 517 U.S. 735, 744–45, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996).

### B. *Statutory Interpretation: 42 U.S.C. § 1395r(f)*

Beginning, as the court must, with the plain language of the statute, it provides in pertinent part, beginning with subsection (a):

(a) Determination of monthly actuarial rates and premiums

(1) The Secretary shall, during September 1983 and of each year thereafter, determine the monthly actuarial rate for enrollees age 65 and over which shall be applicable for the succeeding calendar year . . .

(2) The monthly premium of each individual enrolled under this part for each month after December 1983 shall be the amount determined under paragraph (3), adjusted as required in accordance with subsections (b), (c), (f), and (i) of this section and to reflect any credit provided under section 1395w–24(b)(1)(C)(ii)(III) of this title.

(3) The Secretary, during September of each year, shall determine and promulgate a monthly premium rate for the succeeding calendar year that (except as provided in subsection (g)) is equal to 50 percent of the monthly actuarial rate for enrollees age 65 and over, determined according to paragraph (1) for that succeeding calendar year.

(b) Increase in monthly premium

In the case of an individual whose coverage period began pursuant to an enrollment after his initial enrollment period (determined pursuant to subsection (c) or (d) of section 1395p of this title) and not pursuant to a special enrollment period under section 1395p(4) of this title, the monthly premium determined under subsection (a) of this section (without regard to any adjustment under subsection (i) of this section) shall be increased by 10 percent of the monthly premium so determined for each full 12 months (in the same continuous period of eligibility) in which he could have been but was not enrolled.

(c) Premiums rounded to nearest multiple of ten cents

If any monthly premium determined under the foregoing provisions of this section is not a multiple of 10 cents, such

premium shall be rounded to the nearest multiple of 10 cents.

. . .

(f) For any calendar year after 1988, if an individual is entitled to monthly benefits under section 402 or 403 of this title . . . for November and December of the preceding year, if the monthly premium of the individual under this section for December and for January is deducted from those benefits under section 1395s(a)(1)[3] . . . of this title, and if the amount of the individual's premium is not adjusted for such January under subsection (i) of this section, the monthly premium otherwise determined under this section for an individual for that year shall not be increased, pursuant to this subsection, to the extent that such increase would reduce the amount of benefits payable to that individual for that December below the amount of benefits payable to that individual for that November (after the deduction of the premium under this section).

Significantly, subsection (a)(2) defines "the monthly premium of each individual enrolled under this part for each month after December 1983," and subsection (b) refers to an "increase in monthly premium," and specifically, "the monthly premium determined under subsection (a) of this section. Subsection (b) never uses the words "surcharge" or "penalty."

■ "Statutory definitions control the meaning of statutory words . . . in the usual case." *Burgess v. U.S.*, 553 U.S. 124, 128 S.Ct. 1572, 1577, 170 L.Ed.2d 478

(2008) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201, 69 S.Ct. 503, 93 L.Ed. 611 (1949) *see also Stenberg v. Carhart*, 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000)). ("When a statute includes a specific definition, we must follow that definition. . . ."; 2A N. Singer & J. Singer, Statutes and Statutory Construction § 47:7, pp. 298–299, and nn. 2–3 (7th ed. 2000)). 42 U.S.C. § 1395r(a)(2) defines "the monthly premium of each individual enrolled under this part." "Enrolled under this part" refers to Title 42, Chapter 7, Subchapter XVIII, Part B Supplementary Medical Insurance Benefits for Aged and Disabled. Plaintiff falls within this definition. Therefore, his monthly premium, under the plain language of the statute "shall be the amount determined under paragraph (3), adjusted as required in accordance with subsections (b), (c), (f), and (i) of this section and to reflect any credit provided under section 1395w–24(b)(1)(C)(ii)(III) of this title. Subsection (i) does not apply to Plaintiff because he did not meet the income requirements for a premium increase. The record does not indicate that any credit was provided under 1395W–24(b)(1)(C)(ii)(III), therefore, this is also irrelevant to Plaintiff's monthly premium.

For the following analysis, the Court assumes that Plaintiff's gross OASDI benefits are correctly set forth at pages 170 and 285 of the transcript, and that gross benefit amounts from prior months of a respective year did not change in November, and changed in December only due to a cost of living increase.[4] The Court also

---

**3.** 42 U.S.C. § 1395(s)(a)(1) provides:

(a) Deductions from section 402 or 423 monthly benefits
(1) In the case of an individual who is entitled to monthly benefits under section 402 or 423 of this title, his monthly premiums under this part shall (except as provided in subsections (b)(1) and (c) of this section) be collected by deducting the amount thereof from the amount of such monthly

benefits. Such deduction shall be made in such manner and at such times as the Commissioner of Social Security shall by regulation prescribe. Such regulations shall be prescribed after consultation with the Secretary.

**4.** The record contains a letter from Plaintiff to the SSA, challenging the benefit amounts listed in the SSA's September 14, 2005 letter (Tr. 170–71) to him. See Tr. 248, final paragraph.

assumes the premium set by the Secretary for the year 2006 was $88.50, as set forth in paragraph 9 of the Complaint.

The premium set by the Secretary under paragraph (a)(3) for January 2004 was $66.60, and the monthly premium under paragraph (a)(3) for the preceding year was $58.70. (Tr. 170.) In the preceding year, pursuant to subsection (b), Plaintiff's premium would have been 58.70 + 40% ($23.48) for a total of $82.18. Pursuant to subsection (c), the number would have been rounded to $82.20.

Following the statutory language in subsection (a)(2), the premium must be "adjusted as required in accordance with subsections (b), (c), (f), and (i) of this section and to reflect any credit provided under section 1395w–24(b)(1)(C)(ii)(III) of this title." Based on Plaintiff's enrollment status, the first adjustment to the monthly premium under subsection (b) adds 40% to "the monthly premium determined under subsection (a)." Thus, for January 2004, forty percent of $66.60 ($26.64) would have been added to $66.60 for a total of $93.24. The second adjustment, under subsection (c), would result in the monthly premium being rounded to $93.20.

Plaintiff's gross OASDI November 2003 benefit was $186.70, and the gross December 2003 benefit was $190.60. (Tr. 170.) The first step under subsection (f) is to "deduct the monthly premium of the individual under this section for December and for January." It is important to note that the Medicare Part B "premiums are deducted one month in advance." (Tr. 67). Thus, the December premium is deducted from the benefit for November, and the January premium is deducted from the benefit for December. (Tr. 67). The annual OASDI COLA increase and the [Medicare Part B] premium increase arrive together for the December payment."

(Tr. 67). Thus, Plaintiff's December 2003 premium of $82.20 would have been deducted from his November benefit of $186.70, and he would have received a net OASDI benefit check of $104.50. Plaintiff's January premium of $93.20 would have been deducted from his December benefit of $190.60, and he would have received a net OASDI benefit check of $97.40 in December 2003.

The statute then states, in pertinent part, "the monthly premium otherwise determined under this section for an individual for that year shall not be increased, pursuant to this subsection, to the extent that such increase would reduce the amount of benefits payable to that individual for that December below the amount of benefits payable to that individual for that November (after the deduction of the premium under this section)." Therefore, Plaintiff's monthly premium for January 2004 "shall not be increased" ... "to the extent that such increase would reduce the amount of benefits payable" for December 2003, below the amount payable in November 2003 (after deduction of the premium under this section). In Plaintiff's case, his net benefit check in November 2003 would have been $104.50, and his net benefit check in December 2003 would have been $97.40, but such an increase in his premium would not be allowed because his net benefit would shrink from $104.50 to $97.40. Therefore, his premium could only be increased to the extent that he would still receive a net benefit of $104.50. By deducting $104.50 from his gross benefit amount for December 2003 ($190.60), the result is that his premium could only be increased to $86.10 (instead of $93.20).

The same process would have been followed in subsequent years. When the Secretary raised the premium for 2005 (Tr. 170) to $78.20, forty percent ($31.28) would

The record does not contain a direct response from the SSA to this issue.

have been added to Plaintiff's premium pursuant to subsection (b) for a total of $109.48. Pursuant to subsection (c), this would have been rounded to $109.50. Plaintiff's December 2004 benefit payment (before premium deduction) was $197.80. (Tr. 170.)

Plaintiff's gross OASDI benefit for November 2004 was $190.60. (Tr. 170.) His December 2004 benefit was raised to $197.80. (Tr. 170.) Under subsection (f), Plaintiff's December 2004 premium of $86.10 is deducted from his November benefit of $190.60, resulting in a net benefit check of $104.50. Plaintiff's January premium of $109.50 is deducted from his December benefit of $197.80, resulting in a net benefit of $88.30. Under subsection (f), Plaintiff's net benefit in December 2004 can not decrease below what he received in November 2004, $104.50. By deducting $104.50 from his gross benefit amount for December 2004, $197.80, we find that his premium for 2005 could only be increased to $93.30 (instead of $109.50).

The Secretary raised the premium for 2006 to $88.50. (Compl. ¶ 9). Forty percent would have been added to Plaintiff's premium pursuant to subsection (b) ($88.50 + $35.40), for a total of $123.90. No rounding would have been necessary pursuant to subsection (c).

Plaintiff's gross OASDI benefit for November 2005 was $197.80. (Tr. 170.) His December 2006 benefit was raised to $210.90.[5] Plaintiff's December 2005 premium of $93.30 would have been deducted from his November 2005 benefit of $197.80 for a net benefit check of $104.50. Plaintiff's January 2006 premium of $123.90 would have been deducted from his December benefit of $210.90, resulting in a net benefit of $87.00. Under subsection (f), Plaintiff's net benefit can not decrease below what he received in November 2005, $104.50. By deducting $104.50 from his gross benefit amount for December 2005, $210.90, we find that his premium for 2006 can only be increased to $106.40 (instead of $123.90). The same process would continue in subsequent years.

The ALJ erred by not calculating Plaintiff's premium according to the plain language of the statute. Instead, the ALJ affirmed the calculation set forth in the agency regulation, 42 C.F.R. § 408.20(e)(6) and the instructions in the POMS manual § HI 01001.004. Under the formulas in the regulation and the POMS manual, subsection (b) is in effect disregarded when calculating subsection (f), and then 40% is added to the premium announced by the Secretary for the next year, and that is added to the "variable" premium amount determined under subsection (f). By disregarding subsection (b) when calculating subsection (f), the ALJ ignores the language of subsection (f) which states, "the monthly premium otherwise determined under this section for an individual for that year shall not be increased ..." As described above, the plain reading of the statute indicates that the "monthly premium otherwise determined under this section for an individual" requires an adjustment to the premium under subsection (b) if the individual was a "late-enrollee." The 40% adjustment should be included in the subsection (f) application, as demonstrated above.

Because the plain language of the statute dictates a different calculation than that used by the ALJ, the Court need not reach the issue of whether the agency's interpretation of the statute was a reasonable one. The Court does, however, note that the legislative and regulatory history

---

**5.** The Court deduced the gross benefit of $210.90 by adding the premium actually withheld from Plaintiff's benefit, $110.90, to the net benefit he received in February 2006 (and in subsequent months), $100.00. *See* Tr. 285.

supports Plaintiff's argument that the agency did not update the regulation to reflect the changes made to the language of the 1984 version of the statute by the 1988 amendments, which expressly directed the agency to disregard subsection (b) when calculating subsection (f), among other changes.[6]

The ALJ justified his statutory interpretation by noting the difference between a "premium" and a "penalty" or "surcharge." The ALJ did not find these definitions in the statute, he cited general terms for premium and penalty on the Medicare website, and the dictionary definition for surcharge. The statute at issue never uses the terms "penalty" or "surcharge." Instead, it defines the Medicare Part B(SMI) premium for each month as "the amount determined under paragraph (3), adjusted as required in accordance with subsections (b), (c), (f), and (i) of this section and to reflect any credit provided under section 1395w–24(b)(1)(C)(ii)(III) of this title." This is significantly different from the more general definition of a premium used by the ALJ. The statutory language, by requiring an adjustment pursuant to subsection (b) when appropriate, encompasses what the ALJ defined as a penalty or surcharge within the definition of an individual's monthly premium. Thus, the ALJ incorrectly concluded that "[t]he definition of a premium does not include any penalty assessed for late enrollment." (Tr. 227).

As the hypothetical above demonstrates, the ALJ was also wrong to conclude "that to ignore the "intent of the limited application of the hold-harmless provision [subsection (f) ] . . . would make the application

of a penalty [subsection (b) ] obsolete and result in the unfair implementation of non-penalty Part B premiums for those who did not enroll on time," and "to allow those who enrolled late to the same benefits of a premium limitation, including a reduction to the amount of the penalty, would effectively result in the absence of a penalty." (Tr. 229–30). Under the plain language of the statute, the monthly premium is increased for late enrollment [the so-called penalty] and the comparison, under subsection (f), of prior year benefits also takes into account that an individual was paying an increased premium [the so-called penalty] in the previous year, thus reducing his net benefit below those who were not late-enrollees. In this manner, the *total* premium is adjusted to prevent the individual from suffering a decrease in his *net* benefit. Thus, the so-called penalty is in no way obsolete, absent or unfair to "on-time enrollees".

### C. Due Process

Plaintiff claims that he was denied due process due to the loss and reconstruction of the administrative record, as well as delays in the administrative proceedings. (Compl. ¶¶ 17–18). The MAC held that Plaintiff's due process rights were not violated as "[t]he ALJ conducted a *de novo* review of the record after providing the beneficiary with a hearing, and the beneficiary was given a full and fair opportunity to present his case." (Tr. 5).

■ Generally, due process requires notice and an opportunity to be heard. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 33

---

**6.** *See* Tr. 253–54; *and see* Deficit Reduction Act of 1984, Pub. L. 98–369, § 2303, 98 Stat. 494 (1984) (adding subsection (f) to Section 1839 of the Social Security Act; *compare* Medicare Catastrophic Coverage Act, Pub. L. 100–360, § 211(b), 102 Stat. 683 (1988) (amending subsection (f) of Section 1839 of the Social Security Act); *see also* 51 Fed. Reg. 35291–01 (Oct. 2, 1986) [pre–1988 amendments]; *compare* 54 Fed. Reg. 43862 (Oct. 27, 1989); and 71 Fed. Reg. 54665–67 (Sept. 18, 2006).

L.Ed.2d 548 (1972); *see also Hollon ex rel. Hollon v. Commissioner of Social Sec.*, 447 F.3d 477, 488 (6th Cir.2006) (basic principles of due process require notice and opportunity to be heard before social security disability benefits can be denied). Despite the fact that the MAC could not retrieve Plaintiff's file for its review of the ALJ's decision, the Council complied with Plaintiff's due process rights by vacating the ALJ's initial decision, and remanding Plaintiff's case so that the ALJ could reconstruct the record or develop a new record. (Tr. 232). The only issue before the administrative law judge was the statutory interpretation of 42 U.S.C. § 1395r(f), and the ALJ's review was de novo. Unlike the usual case where factual issues are in dispute, the only information necessary to the ALJ's review was how the agency had interpreted the statute, and Plaintiff's argument of how the statute should have been interpreted. This information is contained in the reconstructed record, thus, Plaintiff was given an adequate opportunity to be heard.

Furthermore, the Court finds that the delays in reaching a final decision to Plaintiff's claims in this case did not deprive him of due process. Plaintiff made his first request for reconsideration of an agency determination in April 2005, and filed his request for a hearing before an ALJ on June 15, 2006. (Compl. ¶ 11). From the date of ALJ Steele's initial decision in this case on December 14, 2006, to the date that the MAC denied Plaintiff's request for review on January 3, 2008, approximately thirteen months had passed, with roughly two and a half months of delay due to the lost administrative record.

"Regrettably, delay is a natural concomitant of our administrative bureaucracy." *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir.1989). The Supreme Court in *Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984), rejected the claim that

the federal courts could prescribe mandatory deadlines under the Act for the processing of Social Security claims. Under the similar administrative process of social security disability claims, the Court noted, "Congress repeatedly has been made aware of the long delays associated with resolution of disputed disability claims and repeatedly has considered and expressly rejected suggestions that mandatory deadlines be imposed to cure that problem." *Id.* at 111, 104 S.Ct. 2249. The Court further stated, "Certainly in Congress the concern that mandatory deadlines would jeopardize the quality and uniformity of agency decisions has prevailed over considerations of timeliness." *Id.* at 114, 104 S.Ct. 2249.

Here, the total of two years and eight months for the entire administrative review process was not a constitutionally unreasonable delay. *See Littlefield v. Heckler*, 824 F.2d 242, 247 (3rd Cir.1987) (nine month delay between decision of ALJ and final decision of Medicare Appeals Counsel not violative of due process); *Reagan v. Secretary of Health & Human Servs.*, 877 F.2d 123, 126 (1st Cir.1989)(65 day delay by Appeals Council was not unreasonable); *Isaacs*, 865 F.2d at 477 (neither the six-month delay created by additional hearing, nor the estimated total of 19 months from claim initiation to completion of ALJ review considered remarkable). "Of course delay can be so unreasonable as to deny due process, such as . . . when a recipient demonstrates immediate financial need." *Isaacs*, 865 F.2d at 477. However, this does not apply to Plaintiff because he has not shown that he has an immediate financial need for the small sum at issue in this litigation.

### D. Relief Requested

As noted above, this court's jurisdiction to review the Secretary's decision is pursu-

ant to 42 U.S.C. § 405(g). Relief under this provision is limited to "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Therefore, Plaintiff is not entitled to declaratory judgment type relief, injunctive type relief, or class-wide relief that he requested.

## III. *Conclusion*

The Secretary miscalculated Plaintiff's Medicare Part B premiums with respect to the COLA increase for the year 2004 and subsequent years, which are each affected by prior year premium calculations. The formula used by the Secretary is not consistent with the plain language of the statute. Therefore, the case should be remanded for calculation of Medicare Part B Premiums beginning in the year 2004, and each subsequent year, consistent with the process spelled out in this Report and Recommendation, and Plaintiff should be refunded any amount due. Plaintiff's requests for other types of relief based on the miscalculation should be denied. Plaintiff's due process claims should also be denied.

## IV. *Recommendation*

Therefore, the Court **recommends** that:

1. Michael J. Astrue, Commissioner of Social Security be dismissed as a defendant;

2. Plaintiff's Motion for Summary Judgment [Docket No. 20] be **granted in part and denied in part;** and

3. Defendants' Motion for Summary Judgment [Docket No. 24] be **granted in part and denied in part;** and

4. the case be remanded to the Secretary for calculation of Medicare Part B premiums beginning in the year 2004, and each subsequent year, consistent with the process spelled out in this Report and

Recommendation, and Plaintiff should be refunded any amount due.