# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2179

_____

David W. Gardner,                              *
                                               *
            Appellee,                          *
                                               *
     v.                                        *
                                               *
Board of Police Commissioners, for             *
Kansas City, Missouri; Karl Zobrist,           *
in his individual and official capacity        *
as President of the Board of Police            *
Commissioners of KCMO; Terry                   *    Appeal from the United States
Brady, in his individual and official          *    District Court for the
capacity as Vice President of the Board        *    Western District of Missouri.
of Police Commissioners of KCMO;               *
Mark Thompson, in his individual and           *
official capacity as a member of the           *
Board of Police Commissioners of               *
KCMO; James Wilson, in his individual *
and official capacity as a member of the *
Board of Police Commissioners of               *
KCMO; Mark Funkhouser, in his                  *
individual and official capacity as a          *
member of the Board of Police                  *
Commissioners of KCMO; Officer John *
Doe, in his official capacity as a police      *
officer of the KCMO Police Department *
and in his individual capacity; Sergeant *
Jane Doe, in her official capacity as a        *
police officer of the KCMO Police              *
Department and in her individual               *
capacity; James Corwin, in his                 *
individual and official capacity; David        *

Bernard in his individual and official capacity; Samantha Parkhurst, in her individual and official capacity,

           Defendants,

Joel Ritchie, in his individual and official capacity,

           Defendant/Appellant,

Michael Hutcheson, in his individual and official capacity; Laura Barton, in her individual and official capacity; Christine Laughlin, in her individual and official capacity,

           Defendants.

          \*
          \*
          \*
          \*
          \*

———————

Submitted: January 13, 2011
Filed: June 9, 2011

———————

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

———————

COLLOTON, Circuit Judge.

On September 24, 2007, Kansas City, Missouri, police officer Joel Ritchie shot and injured David Gardner. Gardner brought this action under 42 U.S.C. § 1983 and various state-law theories against Ritchie, several other police officers, the police chief, the Board of Police Commissioners of Kansas City, and the individual members of the Board. The district court granted Ritchie's motion for summary judgment in part and granted the remaining defendants' motion for summary judgment in full. As

-2-

relevant to this appeal, the court concluded that Ritchie was not entitled to qualified immunity with respect to Gardner's § 1983 claim that alleged a violation of the Fourth Amendment. Ritchie appeals the court's determination on qualified immunity. We vacate and remand for further proceedings.

I.

We recite the facts in the light most favorable to Gardner. On the evening of September 24, 2007, Ritchie responded to a homicide scene. Ritchie, who suffers from Type I diabetes, had difficulty controlling his blood sugar level during the course of the day. While at the homicide scene, he experienced intense hunger, and asked a fellow officer to take him to a nearby gas station. During the drive to the gas station, Ritchie did not respond to questions or engage in conversation with the other officer. After arriving, Ritchie entered the gas station's convenience store and consumed a donut and soda.

Ritchie then exited the convenience store and fired his service weapon until it was empty. One bullet hit and injured Gardner, who was seated in his tractor-trailer in the gas station's parking area. Several bullets also hit the tractor-trailer. After the shooting, Ritchie left the premises, and an officer found him walking down the street about a quarter mile from the gas station. The officer reported that Ritchie appeared disoriented, and the officer asked Ritchie to sit down until other officers arrived. Ritchie claims that at the time of the shooting, he was experiencing a hypoglycemic reaction as a result of his diabetes. He maintains that because of his condition, he did not form an intent to fire his weapon, much less to shoot Gardner.

Gardner filed this action pursuant to § 1983 and various state-law theories. Gardner alleged, as relevant here, that Ritchie violated his right under the Fourth Amendment (as incorporated against the States by the Fourteenth) to be free from an unreasonable seizure. Ritchie moved for summary judgment, asserting, *inter alia*, that

he is entitled to qualified immunity. The district court denied the motion in relevant part, concluding that the facts, viewed in the light most favorable to Gardner, established a violation of the Fourth Amendment, and that the law was clearly established at the time of the shooting.

II.

Ordinarily, we do not have jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision. *See* 28 U.S.C. § 1291; *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). Under the collateral order doctrine, however, we have authority to review the denial of qualified immunity through an interlocutory appeal. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Our jurisdiction in such cases is limited to the review of "abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995).

Qualified immunity shields a public official from liability for civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Ritchie is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to Gardner, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable official would have known that his actions were unlawful. *See Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). We review a district court's qualified immunity determination *de novo*, *Doe*, 623 F.3d at 583, and we may elect, in light of the circumstances, to resolve the appeal under only the second step of the analysis. *Pearson*, 129 S. Ct. at 818.

Ritchie argues that he did not violate the Fourth Amendment, because to seize an individual within the meaning of that provision, an officer must subjectively intend that his action will effect a seizure. He maintains that he could not have formulated

-4-

an intent to seize, due to the hypoglycemic reaction that he allegedly experienced at the time of the shooting. Ritchie's physician testified in his deposition that a hypoglycemic reaction causes the brain to stop functioning properly and may cause an individual to become confused and unaware of his surroundings. According to Ritchie, when he experiences such reactions, he cannot distinguish between reality and fiction. Although Ritchie testified that he can recall firing his service weapon while at the gas station, he described his condition at the time as a "dream-like state." He maintains that he did not intend to shoot at anything or anyone, including Gardner, and that he did not realize anyone had been shot until well after the shooting occurred.

The district court rejected Ritchie's argument. The court determined that an officer's subjective intent is irrelevant to whether a seizure occurred. According to the court, "the question is not what, if anything, Ritchie was thinking during this incident." Taking the facts in the light most favorable to Gardner, the court concluded that a Fourth Amendment violation occurred, because "Ritchie's gun did not accidentally fall out of its holster and discharge," but rather, "Ritchie drew [the gun] from his holster and deliberately fired it." The court further concluded that at the time of the shooting, the law was clearly established on this point, and that Ritchie was thus not entitled to qualified immunity.

A Fourth Amendment seizure occurs when an officer, "by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement, *through means intentionally applied*." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotations and citations omitted). The Supreme Court in *Brendlin*, which was decided before the incident in this case, explained that the "intent that counts under the Fourth Amendment is *the 'intent [that] has been conveyed to the person confronted*.'" *Id.* at 260-61 (alteration in original) (emphasis added) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 575 n.7 (1988)). The Court there held that when an officer makes a traffic stop, a passenger is seized within the meaning of the Fourth Amendment. *Id.* at 251. The Court rejected the notion that a passenger is not

seized when an officer subjectively intends to investigate only the driver. *Id.* at 260-61. Although a Fourth Amendment seizure requires the "willful restriction on freedom of movement," the Court explained that this "is no invitation to look to subjective intent when determining who is seized." *Id.* at 261. The relevant issue is "the intent of the police *as objectively manifested*." *Id.* at 260 (emphasis added).

These statements from *Brendlin* suggest that it is immaterial whether Ritchie, due to a hypoglycemic reaction, lacked the subjective intent to seize Gardner. While Gardner must show that Ritchie seized him "through means intentionally applied," *Brendlin* appears to say that we should determine whether Ritchie possessed the requisite intent by looking at the objective circumstances of the incident to see what intent was conveyed to Gardner, the person confronted. And viewing the evidence in the light most favorable to Gardner, the objective circumstances at the time of the shooting would support a finding that Ritchie intended to effect a seizure. Ritchie emerged from the convenience store, removed his gun from his holster, and opened fire, hitting Gardner and his tractor-trailer. The person confronted, Gardner, had no basis to know of Ritchie's hypoglycemic state. *Cf. Brower v. Cnty. of Inyo*, 489 U.S. 593, 600 (1989) (Stevens, J., concurring in the judgment) ("No one would suggest that the Fourth Amendment provides no protection against a police officer who is too drunk to act intentionally, yet who appears in uniform brandishing a weapon in a threatening manner.").

But *Brendlin* does not stand alone. Ritchie cites the Supreme Court's earlier decision in *Brower v. County of Inyo* to support his contention that "actual, subjective intent to seize is required for a Fourth Amendment violation." Appellant's Br. 16. In *Brower*, the Court held that a Fourth Amendment seizure "requires an intentional acquisition of physical control." *Brower*, 489 U.S. at 596. The Court explained that a seizure must involve a "willful" detention or taking, a conclusion that "is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." *Id.* "[T]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise

lawful government conduct." *Id.* (internal quotations and citation omitted). Applying these principles, the Court determined that the complaint in that case alleged facts sufficient to constitute a seizure: The defendant police officers meant for the suspect to be stopped by a roadblock, and he was so stopped when he collided with it. *Id.* at 598-99.

While the Court's language in *Brower* alludes to an officer's subjective state of mind by focusing on whether the seizure was "willful" and "knowing," the Court also rejected the officers' argument that there was no seizure because they specifically intended only to induce the suspect to stop voluntarily when he saw the roadblock. *Id.* at 598. The Court cautioned that it was not "practicable to conduct such an inquiry into subjective intent," *id.*, and that it was "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place *in order to achieve* that result." *Id.* at 599 (emphasis added).

How to read *Brower* has been the subject of debate. Justice Stevens's separate opinion interpreted the Court's opinion to disclaim *any* inquiry into an officer's subjective intent, and to employ "the concept of objective intent" to determine whether a seizure occurred. *Id.* at 600 (Stevens, J., concurring in the judgment). But the Court did not use the term "objective intent," and an alternative reading is reasonable. The Court's focus on whether the seizure was "willful," and its explanation that an "unknowing act" cannot be a seizure, suggests that there was an inquiry into the subjective intent of the officers at a higher level of generality – that is, an inquiry to ensure that the officers intended to achieve the result of a seizure through a particular instrumentality. On this reading, once it was established that the officers subjectively intended to terminate an individual's freedom of movement through use of a roadblock, further inquiry into subjective intent was impractical, and it was inconsequential whether the result was achieved in the precise manner intended by the officers. *See* George E. Dix, *Subjective "Intent" as a Component of Fourth Amendment Reasonableness*, 76 Miss. L.J. 373, 378 & n.18 (2006).

Several courts of appeals appear to have followed this latter reading of *Brower*, at least before *Brendlin*. A number of post-*Brower* cases, for example, hold that police do not effect a seizure when they accidentally shoot a bystander who is not the intended target of a police action. *See Bublitz v. Cottey*, 327 F.3d 485, 489 (7th Cir. 2003); *Childress v. City of Arapaho*, 210 F.3d 1154, 1157 (10th Cir. 2000); *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000); *Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998); *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991); *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 795 (1st Cir. 1990). These cases might be reconciled with *Brendlin*'s discussion of "objective intent," on the view that the *objective circumstances* did not convey to the bystanders that they were the target of police action. *Cf. Brendlin*, 551 U.S. at 262 ("[A]n occupant of a car who knows that he is stuck in traffic because another car has been pulled over . . . would not perceive a show of authority as directed at him or his car."). But language in these pre-*Brendlin* decisions implies that an officer's subjective state of mind was relevant to those courts in determining whether a seizure occurred. *E.g.*, *Claybrook*, 199 F.3d at 359 ("[T]he authorities could not 'seize' any person other than one who was a deliberate object of their exertion of force.") (citing *Brower*, 489 U.S. at 596).

*Brendlin* seemed to steer the analysis toward an inquiry into "objective intent," but the opinion did not disavow statements in *Brower* that led lower courts and commentators to focus at some level on the subjective intent of the officers. The Court in *Brendlin*, for example, explained that "it was dispositive that 'Brower *was meant to be stopped* by the physical obstacle of the roadblock – and that he was so stopped.'" *Brendlin*, 551 U.S. at 261 (emphasis added) (quoting *Brower*, 489 U.S. at 599). And significantly for present purposes – namely, judging what a reasonable officer should have known in the aftermath of *Brendlin* – this court in a post-*Brendlin* decision cited *Brower* and the bystander cases for the proposition that the occurrence of a seizure depends on an officer's subjective state of mind. In *Moore v. Indehar*, 514 F.3d 756 (8th Cir. 2008), the court explained that a plaintiff "must show that [the officer] intended to seize [him] through the means of firing his weapon at [him] to

-8-

establish a Fourth Amendment claim," *id.* at 760, and adverted to the officer's deposition testimony as relevant evidence concerning "*his intentions* upon firing the weapon." *Id.* at 761 (emphasis added).

Given this legal landscape, we think it was not clearly established as of September 2007 that an officer in Missouri could effect a seizure under the Fourth Amendment without subjectively intending to do so. Ritchie was therefore not on clear notice that he must conform his conduct – including conduct that was a foreseeable consequence of his medical condition – to a rule that might result in liability under the Fourth Amendment for actions that he did not subjectively intend. He is entitled to qualified immunity if the state of the law did not allow him reasonably to anticipate that his conduct may give rise to liability for damages. *Anderson v. Creighton*, 483 U.S. 635, 646 (1987).

For these reasons, we conclude that the district court erred in denying Ritchie's motion for summary judgment on Gardner's Fourth Amendment claim without considering Ritchie's subjective intent. The district court should determine whether the evidence, viewed in the light most favorable to Gardner, would support a finding by a reasonable jury that Ritchie subjectively intended to effect a seizure of Gardner by firing his weapon. If not, then Ritchie is entitled to qualified immunity. The portion of the district court's order denying Ritchie's motion for summary judgment on the § 1983 claim is vacated, and the case is remanded for further proceedings.

_____