# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-3055

_____

Charles Degnan; Kenneth McCardle; Virginia Belford; Dale Erlandson,
Individually and on behalf of a class

*Plaintiffs - Appellants*

v.

Sylvia Burwell,[1] Secretary of the Department of Health and Human Services;
Carolyn W. Colvin, Acting Commissioner of the Social Security Administration

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 11, 2014
Filed: August 25, 2014

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

---

[1]Sylvia Burwell is substituted for her predecessor, Kathleen Sebelius, as the Secretary of the Department of Health and Human Services. Fed. R. App. P. 43(c)(2).

Charles Degnan, Kenneth McCardle, Virginia Belford, and Dale Erlandson appeal the district court's[2] dismissal of their amended complaint for lack of subject matter jurisdiction and mandamus jurisdiction based on their failure to exhaust administrative remedies. We affirm.

## I.    BACKGROUND

Degnan, along with the other named plaintiffs, filed this lawsuit in the United States District Court for the District of Minnesota against the Secretary of the Department of Health and Human Services ("the Secretary" and "DHHS") and the Commissioner of the Social Security Administration ("the Commissioner" and "SSA"), on behalf of themselves and a class, alleging a miscalculation of their Medicare Part B premium calculations. "The Medicare Part B medical insurance program for the aged covers a part of the cost of certain physicians' services, home health care, outpatient physical therapy, and other medical and health care. . . . [I]t is financed in equal parts by the United States and by monthly premiums paid by individuals aged 65 or older who choose to enroll." Mathews v. Diaz, 426 U.S. 67, 70 n.1 (1976); see 42 U.S.C. § 1395j. Medicare Part B premiums are calculated pursuant to 42 U.S.C. § 1395r. Plaintiffs' complaint alleged that the calculation of

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Part B premiums conflicted with the plain language of §§ 1395r(b)[3] and 1395r(f),[4] resulting in their overpayment of premiums.

_____

[3]Section 1395r(b), "Increase in monthly premium," in relevant part, reads:

In the case of an individual whose coverage period began pursuant to an enrollment after his initial enrollment period . . . , the monthly premium determined under subsection (a) of this section . . . shall be increased by 10 percent of the monthly premium so determined for each full 12 months (in the same continuous period of eligibility) in which he could have been but was not enrolled. . . .  Any increase in an individual's monthly premium under the first sentence of this subsection with respect to a particular continuous period of eligibility shall not be applicable with respect to any other continuous period of eligibility which such individual may have. No increase in the premium shall be effected for a month in the case of an individual who enrolls under this part during 2001, 2002, 2003, or 2004 and who demonstrates to the Secretary before December 31, 2004, that the individual is a covered beneficiary (as defined in section 1072(5) of Title 10).

[4]Section 1395r(f), "Limitation on increase in monthly premium," in relevant part, reads:

For any calendar year after 1988, if an individual is entitled to monthly benefits under section 402 or 423 of this title . . . for November and December of the preceding year, if the monthly premium of the individual under this section for December and for January is deducted from those benefits under section 1395s(a)(1) or section 1395s(b)(1) of this title, and if the amount of the individual's premium is not adjusted for such January under subsection (i) of this section, the monthly premium otherwise determined under this section for an individual for that year shall not be increased, pursuant to this subsection, to the extent that such increase would reduce the amount of benefits payable to that individual for that December below the amount of benefits payable to that individual for that November (after the deduction of the premium under this section).

In 2008, Degnan pursued a similar claim, see Degnan v. Sebelius, 658 F. Supp. 2d 969 (D. Minn. 2009) ("Degnan I"). In Degnan I, the district court ruled in favor of Degnan, holding that the SSA's calculation of the late-enrollment premiums conflicted with the plain language of the Medicare Act as to premiums paid by Degnan. Id. at 986. The Degnan I court limited its holding to Degnan individually and declined class-wide relief. Id. at 988. Following Degnan I, the SSA recalculated Degnan's Part B premiums for 2004 through 2010 and refunded him $759.70. According to the complaint filed in this current lawsuit, Degnan's 2011 and 2012 premiums were incorrectly calculated using the pre-Degnan I methodology. After Degnan filed this suit, the Secretary and Commissioner conceded that Degnan's premiums were incorrect and adjusted his 2011 and 2012 premiums to comply with Degnan I, but Degnan maintained that the corrected calculations remained inaccurate.

The Secretary and Commissioner filed a motion to dismiss the complaint for lack of jurisdiction. The district court concluded that because the plaintiffs failed to exhaust their administrative remedies and waiver of the exhaustion requirement was not warranted, it lacked subject matter jurisdiction to hear the case. The court granted the motion to dismiss. Degnan and the named plaintiffs appeal.

## II. DISCUSSION

We review a district court's grant of a motion to dismiss for lack of jurisdiction de novo. Doe v. Nixon, 716 F.3d 1041, 1051 (8th Cir. 2013). The Medicare Act itself provides for district court review of the Secretary's benefit determinations. 42 U.S.C. § 1395ff(b)(1)(A). Section 1395ff(b)(1)(A) incorporates 42 U.S.C. § 405(g), which governs the district court's review of SSA decisions, and accordingly informs us here. See Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000, 1003 (8th Cir. 1998) (Section 405(g) as adapted by § 1395ff(b)(1) "creates federal jurisdiction over final agency decisions in administrative Medicare appeals."). "In

order for the district court to have subject matter jurisdiction under section 405(g), a claimant must have presented a claim for benefits to the Secretary and exhausted the administrative remedies prescribed by the Secretary." Schoolcraft v. Sullivan, 971 F.2d 81, 84-85 (8th Cir. 1992). Courts cannot waive the jurisdictional presentment requirement, but may, in exceptional circumstances, waive the exhaustion of administrative remedies requirement. Sipp v. Astrue, 641 F.3d 975, 980 (8th Cir. 2011).

"Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Weinberger v. Salfi, 422 U.S. 749, 765 (1975). Courts may waive the exhaustion requirement if the claimants establish: "(1) their claims to the district court are collateral to their claim of benefits; (2) that irreparable injury will follow; and (3) that exhaustion will otherwise be futile." Titus v. Sullivan, 4 F.3d 590, 592 (8th Cir. 1993); see also Bowen v. City of New York, 476 U.S. 467, 483-84 (1986) (setting forth the Eldridge[5] factors).

Here, the appellants concede that they failed to exhaust administrative remedies, but assert that the district court misapplied the Eldridge factors. Accordingly, they argue, that the district court should have waived the exhaustion requirement. The district court, in determining whether waiver was appropriate, concluded that the plaintiffs' claim was not collateral to their claim for benefits, and thus, "even if plaintiffs could establish futility and irreparable harm, waiver of administrative exhaustion [was] not warranted." The appellants contend that the

---

[5]These waiver factors were first employed by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976), and are accordingly referred to as the "Eldridge factors."

district court was "required to examine *each* factor separately because no single factor is indispensable," stated differently, the appellants contend that each of the Eldridge factors could be dispositive. They argue it was futile to exhaust administrative remedies; and thus, the district court should have waived the exhaustion requirement. We disagree.

The district court's opinion is consistent with our circuit's precedent. In a previous case applying the Eldridge factors, we concluded that where the parties failed to establish the first of the factors, the court need not consider the remaining two, as the district court did here. Clarinda Home Health v. Shalala, 100 F.3d 526, 531 (8th Cir. 1996). Moreover, as the appellees assert, when our circuit utilizes the Eldridge factors, the court, in all but one case, has connected the factors with the word "and," rather than the word "or," indicating the conjunctive nature of the factors. See id.; Titus, 4 F.3d at 592; Schoolcraft, 971 F.2d at 85; Anderson v. Sullivan, 959 F.2d 690, 693 (8th Cir. 1992); Thorbus v. Bowen, 848 F.2d 901, 903 (8th Cir. 1988).[6]

The district court's opinion likewise follows the Supreme Court's reasoning in Bowen, in that it not only considered all of the Eldridge factors, but also considered the practical purposes of the exhaustion requirement. 476 U.S. at 484. In Bowen, the Court noted that "[t]he ultimate decision of whether to waive exhaustion should not

---

[6]The case that uses the word "or" rather than "and," In Home Health, Inc. v. Shalala, 272 F.3d 554, 560 (8th Cir. 2001), cites to Anderson, 959 F.2d at 693, which recites the Eldridge factors using "and." In Home Health does not bear the weight appellants place on it because in that case, the court still ultimately denied waiver based on one factor–the lack of futility. 272 F.3d at 560. Nonetheless, given our circuit's rule that "when faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict," Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (internal quotation omitted), Anderson's use of "and" controls.

be made solely by mechanical application of the Eldridge factors, but should also be guided by the policies underlying the exhaustion requirement." Id. The appellants advance this statement in support of their argument, but, as we read the Court's Bowen opinion, the Eldridge factors should be considered along with the policies underlying the "intensely practical" exhaustion doctrine. Id. In addition to its Eldridge-factor analysis, the district court's opinion considered the policies underlying exhaustion, which, as the court stated, would allow the agency to "'apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts.'" Degnan v. Sebelius, No. 12-1869, Order at 7 (July 31, 2013) (quoting Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000)).

Furthermore, the thrust of appellants' argument–that exhaustion would be futile–is unpersuasive and does not warrant waiver of the exhaustion requirement on its own.[7] While Degnan previously exhausted his administrative remedies prior to reaching the district court in Degnan I, he did not do so with regard to the miscalculation of his 2011 and 2012 premiums, nor did the other named plaintiffs pursue administrative remedies. As the appellees point out, there is a question as to whether all of the named plaintiffs even presented their claim to the agency to satisfy the nonwaivable jurisdictional requirement. Moreover, regarding Degnan's claims, the Secretary and Commissioner corrected Degnan's premium calculations after he filed the complaint in this case, but he maintains that, even after DHHS and SSA made the correction, his premiums were still miscalculated. These are only a few examples of the factual discrepancies that could potentially be solved by an

_____

[7]Because the appellants do not raise any argument regarding the other two Eldridge factors, we consider them waived and need not address them here. See Stephenson v. Davenport Cmty. Sch. Dist., 110 F.3d 1303, 1306-07 n.3 (8th Cir. 1997) (noting that, generally, we will consider an issue not raised or briefed to this court waived).

adequately-developed administrative record, illustrating the importance of exhaustion in this case. While the appellants are challenging the systematic policy applied by the SSA and DHHS, they are, at bottom, ultimately challenging the amount of premiums paid, a determination that should be first made by the agency. Cf. Ill. Council on Long Term Care, 529 U.S. at 13-15 (finding no distinction between claims for money or benefits and claims that involve "the application, interpretation, or constitutionality of interrelated regulations or statutory provisions," for purposes of related 42 U.S.C. § 405(h)). Because this case is not one of the exceptional cases where waiver of exhaustion is appropriate, we affirm the district court's determination that it lacked subject matter jurisdiction.

Finally, the appellants challenge the district court's denial of mandamus jurisdiction, as codified in 28 U.S.C. § 1361. We affirm the district court's denial, given that the appellants may pursue another avenue of relief–that is, the administrative process. See Heckler v. Ringer, 466 U.S. 602, 616 (1984) (denying mandamus jurisdiction where the claimants could seek relief by exhausting their administrative remedies).

## III.  CONCLUSION

For these reasons we affirm the district court.

_____