# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-1246
_____

Vanessa Dundon; Crystal Wilson; David Demo; Guy Dullknife, III; Mariah Marie Bruce; Frank Finan, on behalf of themselves and all similarly situated persons,

*Plaintiffs - Appellants*,

v.

Kyle Kirchmeier; Morton County; City of Mandan; Jason Ziegler; Stutsman County; Chad Kaiser; Does 1-100,

*Defendants - Appellees*,

------------------------------

National Congress of American Indians; National Police Accountability Project

*Amici on Behalf of Appellant(s)*.
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: September 19, 2023
Filed: November 3, 2023
_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This appeal arises from a protest of the Dakota Access Pipeline at the Backwater Bridge in Morton County, North Dakota. Police officers deployed water, tear gas, rubber bullets, and bean bags to disperse a crowd. The appellants participated in the protest, and they were allegedly injured by the officers' use of force. The protestors sued Morton County, the City of Mandan, Stutsman County, the law enforcement chiefs for those municipalities, and one hundred unnamed officers. The district court[*] granted summary judgment for the defendants. The protestors appeal, and we affirm.

I.

The Dakota Access Pipeline carries oil from North Dakota to Illinois. Construction of the pipeline attracted large protests. A focal point for the protests was the Backwater Bridge on Highway 1806 in Morton County, North Dakota. The North Dakota Department of Transportation closed the bridge and placed "No Trespassing" signs near it. Law enforcement officers constructed a barricade composed of two dump trucks chained to concrete traffic barriers and barbed wire on the north end of the bridge.

The governor of North Dakota organized a "Unified Incident Command" to respond to the protests. The command was composed of the Morton County Sheriff's Office and other law enforcement agencies. The Stutsman County Sheriff's Office and the City of Mandan's police department volunteered to assist in the effort. The chief of each law enforcement agency remained in control of his agency's officers,

---

[*]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

and left decisions about using force in response to the protests to the discretion of the individual officer.

The events at issue occurred on November 20, 2016. Videos recorded by protestors depict the confrontation between the police officers and the protestors. A group of protestors drove a semi-trailer truck onto the south end of the bridge. In response, law enforcement officers approached their side of the barricade. They told the protestors not to use the semi-trailer truck to pull the dump trucks off the bridge. Despite this directive, a group of protestors connected one of the dump trucks to the semi-trailer truck with a chain, and used the semi-trailer truck to drag the dump truck off the south side of the bridge.

The crowd of protestors grew larger and eventually numbered in the hundreds. A group of the protestors carried large makeshift shields, and some wore gas masks. This group organized itself into a unit and began to march toward the police barricade to remove the second dump truck. Using a loudspeaker, the police officers announced "one last warning" to "vacate the bridge immediately," but the large crowd remained in place.

Over the course of the evening, the police officers remained on their side of the barricade. They used intermittent force to disperse the crowd and to prevent protestors from breaching the barricade. The officers fired tear gas canisters into the crowd. The gas proved ineffective: the wind blew the gas back at the officers, and protestors threw canisters back at the officers.

The officers also deployed rubber bullets and lead-filled bean bags. Protestors started fires in the brush by the bridge during the encounter, and officers obtained a fire truck from the City of Mandan in response to the fires. Officers used water from the fire truck's hose to extinguish the fires, and also sprayed the protestors with the hose in an effort to disperse them.

The appellants participated in the protests and were allegedly injured by the officers' use of force. They sued one hundred unnamed officers under 42 U.S.C. § 1983, alleging that the officers violated their constitutional rights under the Fourth and Fourteenth Amendments. The complaint asserted claims of municipal liability against Morton County, Stutsman County, and the City of Mandan. The plaintiffs also sued Morton County Sheriff Kyle Kirchmeier, Stutsman County Sheriff Chad Kaiser, and City of Mandan Chief of Police Jason Ziegler, alleging that each was liable as a supervisor for deliberate indifference to the actions of his officers.

The district court granted summary judgment for the defendants. On appeal, the appellants seek reinstatement of their § 1983 claims against the individual officers for using excessive force in violation of their Fourth and Fourteenth Amendment rights, their claim against the municipalities alleging unconstitutional policies, and their claim against Kirchmeier, Kaiser, and Ziegler for supervisory liability.

II.

A.

We first consider the protestors' claim that the unnamed officers effected unreasonable seizures under the Fourth Amendment by using excessive force. Qualified immunity provides some protection against suits for civil damages against government officials. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome qualified immunity, the protestors must show that the officers violated a constitutional right, and that the unlawfulness of their conduct was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009). For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While the plaintiffs need not identify "a case directly on point," controlling authority or a robust consensus of

persuasive authority must put the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011).

To establish a Fourth Amendment violation, the claimant must demonstrate that a seizure occurred and that the seizure was unreasonable. *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). The threshold question here is whether the protestors were seized within the meaning of the Fourth Amendment. The protestors maintain that the officers effected a seizure when they used force against them with an intent to disperse the crowd. The municipalities argue, however, that when an officer's use of force is designed to disperse a crowd, there is no seizure.

Even assuming that the plaintiffs could proceed against unnamed police officers, *cf. Roe v. Nebraska*, 861 F.3d 785, 789 (8th Cir. 2017), the protestors have not shown that it was clearly established as of November 2016 that a use of force designed to disperse a crowd constituted a seizure. The protestors maintain that the officers used force to restrain their "freedom of movement" because the force "knocked most of the Appellants and many of the other assembled persons off their feet or otherwise restricted their freedom of movement by stopping them in their tracks." They rely primarily on *Torres v. Madrid*, 141 S. Ct. 989 (2021), which held that police seized a suspect for the instant that police bullets struck her, even though the suspect temporarily eluded arrest thereafter. *Id.* at 993-94, 999. *Torres* was decided after the encounter at issue here, so it does not constitute clearly established law for purposes of this case. In any event, *Torres* involved force used to *apprehend* a suspect, *id.* at 998, and did not address whether force used only to compel departure from an area constitutes a seizure.

This court has recognized that the law is not clearly established in this area. As of 2014, it was not clearly established that the use of tear gas by police to disperse news reporters from the site of public unrest and protests was a seizure. *Quraishi v. St. Charles County*, 986 F.3d 831, 839-40 (8th Cir. 2021). As of 2018, it was not

clearly established that a push used to repel a subject seeking to enter a government facility was a seizure. *Martinez v. Sasse*, 37 F.4th 506, 510 (8th Cir. 2022). The protestors here suggest a legally significant difference between the use of tear gas or pepper spray, which disperses through the air, and the deployment of munitions such as rubber bullets or bean bags. Our decisions, however, have recognized a potential distinction between force used with intent to apprehend and force used with intent to disperse or repel. Those decisions did not place officers on notice that the existence of a seizure depends on the type of force applied for the purpose of dispersing a crowd.

The protestors invoke *Mitchell v. Kirchmeier*, 28 F.4th 888 (8th Cir. 2022), where a protestor alleged that he was injured by lead-filled bean bags during another protest at the Backwater Bridge. This court concluded that the protestor's claim alleging excessive force survived a motion to dismiss. But the protestor in that case "was arrested," so the court had no occasion to consider whether a use of force to disperse rather than to apprehend constituted a seizure. *Id.* at 894. Other cited authorities are similarly inapposite because the officer used force to apprehend a suspect. *Baude v. Leyshock*, 23 F.4th 1065, 1070 (8th Cir. 2022) (suspect pepper sprayed during mass arrest); *Small v. McCrystal*, 708 F.3d 997, 1002 (8th Cir. 2013) (suspect tackled from behind and arrested); *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) (officer performed a "leg sweep" and threw a suspect to the ground during an arrest); *Johnson v. Carroll*, 658 F.3d 819, 823-24 (8th Cir. 2011) (suspect thrown to the ground and maced during arrest); *Shannon v. Koehler*, 616 F.3d 855, 858 (8th Cir. 2010) (suspect slammed to the ground during arrest).

The protestors rely on a decision from the Ninth Circuit about the use of "pepperballs" to disperse students from an unruly party. *Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012). Although the use of force was designed to disperse the students, the court concluded that the student was seized because the "application of force was a knowing and wilful act that terminated Nelson's freedom of movement."

*Id.* While *Nelson* may lend support to the protestors' theory, it does not demonstrate clearly established law as of November 2016 that the officers' use of force to disperse the protestors was a seizure. One decision from another court of appeals falls short of a "robust consensus of authority" clearly establishing that the use of force to disperse is a seizure under the Fourth Amendment. Indeed, after *Nelson* was decided, this court in *Quraishi* and *Martinez* concluded that the law was not clearly established on the relevant point.

The protestors and their *amici* also cite *Brendlin v. California*, 551 U.S. 249 (2007), where the Supreme Court held that a police officer who conducts a traffic stop seizes everyone in the vehicle. *Id.* at 251. The Court rejected the contention that because the officer intended only to investigate the driver, the officer did not seize a passenger. The passenger was seized because the intent conveyed to him was that the officer's show of authority was at least partly directed at the passenger, and that he was not free to leave the stopped vehicle. *Id.* at 257-58. *Brendlin* does not address whether a seizure occurs when the intent conveyed to the subject of force is that he should disperse and leave the scene.

We conclude that the protestors have not established that the individual officers violated a clearly established right under the Fourth Amendment, because it was not clearly established as of November 2016 that use of force to disperse the crowd was a seizure. The protestors do not develop an argument that the actions of the officers clearly "shocked the conscience," *see County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998), or otherwise violated a clearly established right of the protestors under the Due Process Clause. The district court properly dismissed the claims against the officers under the Fourth and Fourteenth Amendments.

B.

We also conclude that the municipalities were entitled to summary judgment on the protestors' claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Even assuming that any officer effected an unreasonable seizure, a municipality may not be liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691.

Where an official policy is lawful on its face, a plaintiff must establish the existence of an unconstitutional "policy" by showing that the municipality's failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 406-07 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407.

The protestors argue that Sheriff Kirchmeier, Sheriff Kaiser, and Chief of Police Ziegler each acted as a "policymaker" for his respective municipality and imposed an unconstitutional policy of using excessive force against the protestors. The record shows, however, that each municipality's chief law enforcement officer imposed a facially lawful policy: all "[d]ecisions as to whether to use force, and the level of force to be applied, depended upon the totality of the circumstances presented to the officer involved, and was a decision to be made by the officer based upon that specific officer's training and judgment." A municipality's policy of leaving the decision of whether and how to use force to the individual officer's discretion is not an unconstitutional policy. *Dick v. Watonwan County*, 738 F.2d 939, 943 (8th Cir. 1984).

The protestors also maintain that the municipalities failed to train their officers in how to use force in the context of crowd control, and failed to supervise their officers during the protest. Municipal liability may be established where a

constitutional violation is accompanied by a showing that the municipality "failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Brown*, 520 U.S. at 409. To determine whether the need for training and supervision was obvious, we consider whether the officers violated a "clear constitutional duty." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc) (quoting *City of Canton v. Harris*, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part). "[A] municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Id.* That is because the "absence of clearly established constitutional rights . . . undermines the assertion that a municipality *deliberately* ignored an *obvious* need for additional safeguards to augment its facially constitutional policy." *Id.* at 394.

It was not clearly established in November 2016 that the officers' use of force to disperse protestors violated a constitutional right under the Fourth Amendment. Thus, the need for training and supervision on dispersal of protestors was not so obvious that it can be characterized as *deliberate* indifference to the protestors' rights to be free from unreasonable seizures.

The protestors similarly contend that Sheriff Kirchmeier, Sheriff Kaiser, and Chief of Police Ziegler are liable as supervisors under 42 U.S.C. § 1983. In § 1983 actions, however, a supervisor is liable only for his or her own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). When a claim is premised on the conduct of subordinates, a supervisor may be liable only upon a showing of deliberate indifference to the offensive conduct. *Saunders v. Thies*, 38 F.4th 701, 716 (8th Cir. 2022). As with the municipalities, there is insufficient evidence here of deliberate indifference by supervisors where the alleged constitutional right was not clearly established. *See Davis v. Buchanan County*, 11 F.4th 604, 624 (8th Cir. 2021). Kirchmeier, Kaiser, and Ziegler were thus entitled to summary judgment.

The judgment of the district court is affirmed.

_____