# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-3034

_____

Daniel Irish

*Plaintiff - Appellee*

v.

Keith McNamara, in his individual capacity as a Hennepin County Sheriff's Deputy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 13, 2024
Filed: July 18, 2024

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

After an on-duty police K9 bit Officer Daniel Irish while they both pursued a suspect, he sued the K9's handler, Deputy Keith McNamara, under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from excessive force and unreasonable seizure. The district court denied Deputy McNamara's motion to dismiss based on qualified immunity. Because it was not clearly established on these

facts that the bite was a seizure, we reverse and remand with instructions to dismiss the complaint.

## I.

We take the complaint in the light most favorable to Officer Irish and accept his factual allegations as true. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). The parties' worlds collided on a rainy Minnesota afternoon in March 2022 after a suspect led police on a high-speed pursuit that ended with a foot chase. An officer radioed that the suspect had scaled a fence and was making a beeline through a nearby cemetery.

Within seconds, Deputy McNamara arrived and deployed his K9, Thor, without a leash. They hopped the fence and gave chase. Meanwhile, Officer Irish radioed that he was heading to the cemetery and requested the suspect's description. Another officer responded, "Suspect, male, . . . he's in a blue shirt now, blue jeans. K9 just got over the fence. [Deputy McNamara] is pursuing him." Officer Irish says he never heard about the K9.

Meanwhile, over the wail of police sirens, Deputy McNamara repeatedly commanded Thor, who could not see the suspect, to "get him!" as they raced down the cemetery path. Officer Irish then turned into the cemetery ahead of them and joined the pursuit. Thor bounded forward, outpacing Deputy McNamara and running behind Officer Irish's squad car. It was approximately 35 seconds after Thor got over the fence when Deputy McNamara heard screaming. His body cam picked up an agonized "Keith [McNamara]! Keith!" Too far away to restrain Thor, Deputy McNamara repeatedly shouted, "Thor, come! Thor! Thor, out!"

Officer Irish's body cam also captured the chaos. Shortly after he requested the suspect's description, he arrived in the cemetery, spotted the suspect just across a ravine, opened his squad car door, and yelled, "Get on the fucking ground!" Thor immediately attacked him. Officer Irish fought to control him but continued to give

the suspect orders. Between breaths, Officer Irish told Thor to "get *him*!"—to no avail. He gasped, "Keith! Keith! I didn't know he was out." Deputy McNamara finally caught up and restrained and refocused Thor. Bloody but unbowed, Officer Irish gave a K9 warning. The suspect started to inch away, so the officers released Thor, who eventually vaulted through the ravine and apprehended him.

Following the incident, Officer Irish sued Deputy McNamara for violating his Fourth Amendment right to be free from excessive force and unreasonable seizure. He alleged that Deputy McNamara released Thor to apprehend the suspect and intended for Thor to bite the first person found in the cemetery. Since that was him, he faulted Deputy McNamara for failing "to give an effective K9 warning." *See Adams v. City of Cedar Rapids*, 74 F.4th 935, 939–40 (8th Cir. 2023) (finding it clearly established as of 2020 that before using a K9, an officer must give the suspect an "[adequate] warning and an opportunity to surrender" (citing *Kuha v. City of Minnetonka*, 365 F.3d 590, 595–96, 598 (8th Cir. 2003), *overruled on other grounds by Szabla v. City of Brooklyn Park*, 486 F.3d 385, 395–96 (8th Cir. 2007) (en banc))).

Deputy McNamara moved to dismiss the complaint based on qualified immunity. During argument on the motion, the district court observed that this was a "highly unfortunate accident," but it nevertheless denied qualified immunity, reasoning that it was clearly established that a seizure occurred within the meaning of the Fourth Amendment. Deputy McNamara now invokes our limited jurisdiction to review the court's interlocutory order. *See Faulk v. City of St. Louis*, 30 F.4th 739, 742 (8th Cir. 2022).

## II.

Qualified immunity provides government officials "some protection against suits for civil damages." *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To prevail, Officer Irish must show that the facts "demonstrate the deprivation of a constitutional or statutory right" and that "the right was clearly established at the time of the deprivation."

*Peterson v. Heinen*, 89 F.4th 628, 633 (8th Cir. 2023) (citation omitted). We may resolve the appeal under only the clearly established prong of the analysis. *See Gardner v. Bd. of Police Comm'rs*, 641 F.3d 947, 950 (8th Cir. 2011); *see also Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022) (cautioning that "courts should think hard, and then think hard again, before deciding a constitutional question that need not be resolved" (cleaned up) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011))).

For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Specificity is especially important in the Fourth Amendment context," *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (citation omitted), meaning we must grant Deputy McNamara qualified immunity unless Officer Irish identifies "controlling authority or a robust consensus of persuasive authority [that] put[s] the constitutional question 'beyond debate,'" *Dundon*, 85 F.4th at 1255 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741–42 (2011)).

Our analysis begins and ends with the "threshold question" of whether Officer Irish was seized within the meaning of the Fourth Amendment. *See id.*; *cf. Whitworth v. Kling*, 90 F.4th 1215, 1217 (8th Cir. 2024). That amendment targets the "misuse of power, not the accidental effects of otherwise lawful government conduct." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) (cleaned up) (citation omitted). Nor does it transform a government employee's every touch into a Fourth Amendment seizure. *Id.*; *accord Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

Instead, a seizure occurs when an officer, "by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement *through means intentionally applied*." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (cleaned up) (citations omitted). The Supreme Court has explained that the "intent that counts under the Fourth Amendment is the 'intent that has been conveyed to the

-4-

person confronted.'" *Id.* at 256–57, 260–61 (cleaned up) (quoting *Chesternut*, 486 U.S. at 575 n.7) (holding that all occupants in a car are seized during a traffic stop). So long as the officer's conduct is "willful," a "seizure occurs even when an *unintended person* or thing is the object of the detention." *Brower*, 489 U.S. at 596, 599 (emphasis added) (citation omitted) (holding that a seizure occurred where a fleeing suspect crashed into a roadblock).

Leveraging these principles, Officer Irish argues that because Deputy McNamara willfully deployed Thor and objectively intended for him to bite the first person he encountered, the bite was a seizure. The deputy counters that he did not subjectively intend to seize *Officer Irish* and that because "the law is unclear as to whether subjective or objective intent should be considered," it was not clearly established that Thor's bite was a seizure. We agree with Deputy McNamara.

We have already recognized that even after *Brower* and *Brendlin*, the law is not clearly established in this area. As of 2007, it was not clearly established that an officer "could effect a seizure under the Fourth Amendment without subjectively intending to do so." *Gardner*, 641 F.3d at 953. In *Gardner*, we explored the role that subjective intent plays in a seizure analysis after an officer shot someone while experiencing a medical reaction rendering him unable to "distinguish between reality and fiction." *Id.* at 950. We explained that *Brendlin* focused on "objective intent," but it didn't "disavow statements in *Brower* that led lower courts and commentators to focus at some level on the subjective intent of the officers." *Id.* at 952–53. We also observed that we said in a post-*Brendlin* case that "the occurrence of a seizure depend[ed] on an officer's subjective state of mind." *Id.* at 953 (citing *Moore v. Indehar*, 514 F.3d 756, 760–61 (8th Cir. 2008)). Given the "legal landscape," we remanded for the district court to decide whether a jury could find that the officer "subjectively intended to effect a seizure." *Id.*

Officer Irish says things have changed since *Gardner*, pointing to *Torres v. Madrid*, which held that police seized a suspect "for the instant th[eir] bullets struck her," even though she temporarily eluded arrest afterward. 592 U.S. 306, 309, 317–

18 (2021); *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1209 (8th Cir. 2013) (observing that a seizure occurred when "the force itself necessarily—if only briefly—restrained the person's liberty" (cleaned up) (citation omitted)). *Torres* observed that "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain," 592 U.S. at 317—a snippet of the opinion that Officer Irish says leaves "no confusion" that an officer's subjective intent is irrelevant to whether a seizure occurred.

Setting aside the myriad ways *Torres* is factually distinguishable, we cannot ignore that in the very same sentence Officer Irish quotes, the Court said that it "*rarely probe*[s] the subjective motivations of police officers in the Fourth Amendment context." *Id.* (emphasis added). Rarely, not never. This qualified language is consistent with the Court's repeated observation that officers' subjective intent "*is relevant* to an assessment of the Fourth Amendment implications of police conduct" insofar as "that intent has been conveyed to the person confronted." *Chesternut*, 486 U.S. at 575 n.7 (emphasis added); *Brendlin*, 551 U.S. at 260–61; *United States v. Warren*, 984 F.3d 1301, 1304 (8th Cir. 2021) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 n.6 (1980)); *cf. Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in *ordinary*, probable-cause Fourth Amendment analysis." (emphasis added)); *McClendon v. Story Cnty. Sheriff's Off.*, 403 F.3d 510, 515 (8th Cir. 2005). Like *Brendlin*, *Torres* focused on "objective intent," but it didn't disavow the Court's prior statements or end any "debate" on subjective intent's role in whether a seizure occurred. *See Gardner*, 641 F.3d at 952–53 (identifying where language in *Brower* and *Brendlin* "allude[d] to an officer's subjective state of mind").

Along these lines, we have identified a potential distinction between cases where officers make "factual mistakes as to identity," *Moore*, 514 F.3d at 760, and those where officers "accidentally shoot a bystander who is not the intended target of police action," *Gardner*, 641 F.3d at 952. The former cases find seizures; the latter do not. And importantly, decisions in the unintended-target cases "impl[y] that an officer's subjective state of mind [is] relevant . . . in determining whether a

seizure occurred." *Id.* (collecting cases); *see also Moore*, 514 F.3d at 760 (explaining that in an unintended-target case, "the question . . . [is] one of intent," meaning the plaintiff "must show that [the officer] intended to seize [him] through the means of firing his weapon *at* [*him*]" (emphasis added)).

Officer Irish protests that the unintended-target cases are immaterial because excessive force cases involving K9s are unique. *See, e.g.*, *Hope v. Taylor*, No. 8:20-cv-196, 2021 WL 694177, at \*5–6 (M.D. Fla. Feb. 23, 2021) (taking a "different tack" from unintended-target cases and holding that a seizure occurred where an officer deployed a K9 that bit a bystander, not the intended suspects). He says that by releasing Thor with the intent that he bite the first person he found, Deputy McNamara had all the intent needed to effect a seizure.[1] Though we have never recognized a constitutional distinction between force-by-K9 and force-by-bullet, the district court did. It relied on *Szabla v. City of Brooklyn Park*, where we found "a submissible case of excessive force" after an officer's K9 was tracking a suspect but ended up biting an innocent bystander. 429 F.3d 1168, 1171–73 (8th Cir. 2005), *rev'd on other grounds en banc*, 486 F.3d at 388. From *Szabla*, the district court inferred an "[i]mplicit" holding that when an officer intentionally deploys a K9 to find and bite a suspect and the K9 bites an innocent bystander, that bite is "a seizure under clearly established law."

---

[1]In addition to *Hope*, Officer Irish supports his proposition with a scattershot of out-of-circuit, mostly district court, opinions holding that police effect a seizure by simply deploying a K9 that subsequently bites a bystander. *E.g.*, *McKay v. City of Hayward*, 949 F. Supp. 2d 971, 976, 979 (N.D. Cal. 2013). That said, some opinions he cites hold that the K9's bite of a bystander was a seizure, but they have language implying that subjective intent was relevant to the seizure analyses. *See, e.g.*, *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 177–78 (4th Cir. 1998). Meanwhile, Deputy McNamara alerts us to decisions where courts have found that no seizure occurred where the K9 was actively tracking a suspect but bit a bystander. *E.g.*, *Maney v. Garrison*, 681 F. App'x 210, 219 (4th Cir. 2017). This is far from a "robust consensus of persuasive authority" making it clearly established that Thor's bite was a seizure. *See Dundon*, 85 F.4th at 1255.

We do not read so much into *Szabla*. It never addressed whether the officer subjectively or objectively intended to seize the plaintiff. *See id.* at 1172–74. And it fits best in the mistaken-identity line of cases. The officer in *Szabla* told his K9 to find and apprehend an unknown suspect, "ordered [the apprehended plaintiff] to show his hands," and then detained and refused to release him until the officers determined that he was not the suspect they were after. *Id.* at 1172. In other words, the officer arguably subjectively intended to seize the plaintiff whom he mistakenly believed was the suspect. *See Collins v. Schmidt*, 326 F. Supp. 3d 733, 740 (D. Minn. 2018) (stating that an "implicit holding in *Szabla*" is "that a seizure occurs when a [K9] seizes an individual [whom] police did not know to be present, *at least when police initially believe that the individual is the suspect*" (emphasis added)).

This case, on the other hand, fits best in the unintended-target line of cases. Less than a minute before the bite, Deputy McNamara commanded Thor to "get him!"—the fleeing suspect; during the bite, he repeatedly ordered Thor to disengage from Officer Irish and quickly restrained him; and after the bite, he refocused Thor toward the suspect. *See Whitworth*, 90 F.4th at 1218 (examining conduct after the K9's bite in deciding whether a seizure occurred); *cf. Torres*, 592 U.S. at 317 (noting that the "amount of force remains pertinent in assessing the objective intent to restrain"). So *Szabla* could not have put Deputy McNamara on notice that Thor's bite was a seizure.

In the end, this is a "narrow and specialized Fourth Amendment problem," *cf. Melgar ex rel. Melgar v. Green*, 593 F.3d 348, 353 (4th Cir. 2010)—where we must ask "whether the violative nature of *particular* conduct is clearly established," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation omitted). We are not dealing with the use of a K9 against either a suspect or even a traditional bystander, but rather against a fellow officer who was also involved in the chase. That brings us to *Schreckendgust v. White*, where an officer sued her colleague for excessive force after a K9, who was actively tracking a suspect, bit her while she was assisting with the search. No. CIV 06-148, 2006 WL 8443207, at *2 (D.N.M. Dec. 11, 2006). To decide whether a seizure occurred, the district court zeroed in on subjective

intent, reasoning that the officer needed to "show that [the defendant] intended for [the K9] to bite or attack her and that [she] was attacked as a result of that means intentionally applied to *her*." *Id.* at \*4. She could not, so the court dismissed her claim. *Id.*; *see also Hansen v. City of St. Paul*, No. 06–1286, 2007 WL 4224052, at \*1, 3–4 (D. Minn. Nov. 27, 2007) (holding that while an officer "willfully released" the K9, "he did not intend to seize" the plaintiff, who was assisting him with apprehending a suspect).

All told, we cannot say that it was "sufficiently clear that every reasonable official [in Deputy McNamara's shoes] would understand" that he acted unlawfully—or even within the scope of the Fourth Amendment. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up) (citation omitted). Contrary to Officer Irish's warning, our decision today does not mean that one police officer could never seize another. *See Ngo v. Storlie*, 495 F.3d 597, 599–601, 605 (8th Cir. 2007) (finding a submissible case of excessive force after the defendant officer shot the plaintiff, an unarmed plainclothes officer). We hold only that it was not clearly established as of March 2022 that an officer in Minnesota could seize a fellow officer with a K9 without subjectively intending to do so.

## III.

Because Officer Irish has not plausibly pleaded any facts suggesting that Deputy McNamara subjectively intended to seize him, Deputy McNamara is "entitled to qualified immunity on the face of the complaint." *Baude v. Leyshock*, 23 F.4th 1065, 1071 (8th Cir. 2022) (cleaned up) (citation omitted). As the district court observed, "[Deputy] McNamara never intended [this] to [] happen." We reverse and remand with instructions to dismiss Officer Irish's complaint.

_____