# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2998

_____

Tina Hight

*Plaintiff - Appellant*

v.

Deputy Brian Williams; Columbia County Sheriff's Department; Sheriff Mike Loe, Columbia County

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: September 18, 2025
Filed: January 13, 2026

_____

Before COLLOTON, Chief Judge, ERICKSON and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

When an officer fires at a dog, is there a seizure of the dog's owner when the stray bullet hits her instead? We conclude the answer is no.

## I.

Deputy Brian Williams and his partner responded to a domestic-violence call at Tina Hight's home. Williams stayed back in the yard while his partner walked onto the front porch and knocked on the door. When Hight opened it, two dogs ran out toward Williams. Startled, he screamed, "Get back! Get your dog! I'll kill that motherfucker! Get your goddamn dog!" He then fired a warning shot, which caused the dogs to retreat.

As Hight was trying to get them inside, another one, a 9-pound Pomeranian mix, ran out the door and raced toward Deputy Williams. After shouting, "Get back!" he fired again, this time at the dog. He missed, but then heard Hight scream, "He shot me!" Apparently, it had ricocheted and hit her, leaving a bullet fragment lodged in her leg.

Hight sued Deputy Williams for, among other things, excessive force. *See* 42 U.S.C. § 1983; U.S. Const. amends. IV, XIV. At summary judgment, the district court[1] granted qualified immunity. The question for us is whether, on these facts, it should have.

## II.

We review the grant of summary judgment de novo, viewing the record in the light most favorable to Hight and drawing all reasonable inferences in her favor. *See Cartia v. Beeman*, 122 F.4th 1036, 1040 (8th Cir. 2024). Whether Deputy Williams is entitled to qualified immunity depends on the answers to two questions. First, did he violate a constitutional right? Second, was that constitutional right clearly established at the time he acted? *See Fisherman v. Launderville*, 100 F.4th 978, 980

---

[1]The Honorable Susan O. Hickey, then Chief Judge, now United States District Judge for the Western District of Arkansas.

(8th Cir. 2024).  If the answer to either question is no, then it applies.  *See id.*  In this case, we never get past the first step.

## A.

Under the Fourth Amendment, which prohibits "unreasonable searches and seizures," U.S. Const. amend. IV, officers cannot use *excessive* force to "restrain[] the liberty of a citizen," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citation omitted).  The "threshold" inquiry here is whether Deputy Williams seized Hight when the second shot he fired hit her.  *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023).  Only if the answer is yes will we assess the reasonableness of his actions.

To seize someone by force, an officer must act "*with intent to restrain.*" *Torres v. Madrid*, 592 U.S. 306, 317 (2021).  Accidental force, like a police dog biting someone "spontaneous[ly]," does not meet this requirement.  *Whitworth v. Kling*, 90 F.4th 1215, 1218 (8th Cir. 2024); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 837, 843–44 (1998) (determining that no seizure occurred when an officer accidentally "skidded into" someone who had fallen off a motorcycle he was pursuing).  Neither does "force intentionally applied for some other purpose," like "[a] tap on the shoulder to get [some]one's attention."  *Torres*, 592 U.S. at 317.

Which category an officer's conduct falls into depends on "whether [it] *objectively* manifest[ed] an intent to restrain."  *Id.*; *see Brendlin v. California*, 551 U.S. 249, 260 (2007) (remarking that it has "repeatedly rejected attempts to introduce . . . into Fourth Amendment analysis" an inquiry into "the motive of the police for taking the intentional action").  The test focuses on what the officer communicated through his actions, not what he subjectively thought.  *See Torres*, 592 U.S. at 317; *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1208 (8th Cir. 2013) ("Whether physical force was intentionally applied is determined by the officer's objective behavior, not his subjective motive." (citation omitted)).  Intent matters, in other words, but only to the extent it "has been conveyed" to others.  *Irish*

*v. McNamara*, 108 F.4th 715, 719 (8th Cir. 2024) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 575 n.7 (1988)).

The undisputed facts in this case all point to the absence of a seizure.  *See UnitedHealth Grp. Inc. v. Wilmington Tr. Co.*, 548 F.3d 1124, 1127–28 (8th Cir. 2008) (reviewing de novo the "purely legal questions" left by the "undisputed" facts).  Perhaps the most important one is that, as Hight concedes, "Deputy Williams fired his county[-]issued service weapon at [the] Pomeranian."  His words matched his actions, given that each of his statements was about getting the dogs under control, including ordering them to "get back!"  And finally, the bodycam video shows that he fired downward toward the dog as it approached, which supports the conclusion that it was his target, not Hight.  Hitting her was an unfortunate accident.  *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (explaining that the Fourth Amendment does not address "the accidental effects of . . . government conduct").

To be sure, we have stopped just short of fully embracing an objective test in unintended-target cases.  *See Irish*, 108 F.4th at 721; *id.* at 719 (explaining that *Torres* said that "subjective motivations" are "*rarely*" relevant (quoting 592 U.S. at 317)).[2]  *Irish*, however, considered the clarity of the constitutional right the officer had allegedly violated, a step-two inquiry, not whether there had been a violation.  *See id.*; *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." (emphasis added) (citation omitted)).  When we start with step one, by contrast, our job is to connect the dots and reach the right answer.  *See Irish*, 108 F.4th at 719–20 (suggesting that what was "impl[ied]" from past cases created uncertainty (citation omitted)).  To the extent *Irish* commented on the correct constitutional test, its focus was on how the officer had "conveyed" his intent "to the person confronted."  *Id.* at 719 (noting that

---

[2]Just because the "subjective motivations of police officers" can be relevant does not mean that in this context they are.  *Torres*, 592 U.S. at 317; *see Ashcroft v. al-Kidd*, 563 U.S. 731, 736–37 (2011) (identifying some examples when they would be, including "special-needs and administrative-search cases").

"officers' subjective intent '*is relevant* to an assessment of the Fourth Amendment implications of police conduct' *insofar as* 'that intent has been conveyed to the person confronted'" (second emphasis added) (quoting *Chesternut*, 486 U.S. at 575 n.7)).  And applying that test here, as we have already explained, reveals that Deputy Williams did not seize Hight.

## B.

Hight insists he did the moment the bullet fragment "physically touched" her.[3] *Schulz v. Long*, 44 F.3d 643, 647 (8th Cir. 1995).  It is true that a touch can give rise to a seizure by force.  *See Torres*, 592 U.S. at 314.  But as *Torres* makes clear, "not . . . every physical contact between a government employee and a member of the public [is] a Fourth Amendment seizure." *Id.* at 317.  It can be, when the touch conveys an "intent to restrain," but not when it communicates something else.  *Id.* (discussing a tap on the shoulder).

The only thing Deputy Williams conceivably intended to restrain was the dog, which is an "effect[]," not a "person[]."  U.S. Const. amend. IV; *see Oliver v. United States*, 466 U.S. 170, 177 n.7 (1984) ("The Framers would have understood the term 'effects' to be limited to personal . . . property.").  Had Williams hit his target, then he would have "meaningful[ly] interfere[d] with [Hight's] possessory interests" in it.  *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  But the intent to restrain *her* would still have been absent.

The intent does not transfer because the force used must be "intentionally applied" to whomever or whatever the officer is trying to seize.  *Torres*, 592 U.S. at 317; *see id.* at 318 (holding that the officers seized the plaintiff because the "shooting applied physical force to *her* body *and* objectively manifested an intent to restrain

---

[3]Hight's argument that Deputy Williams should be responsible for the "natural consequences of his actions," *Monroe v. Pape*, 365 U.S. 167, 187 (1961), is just another variation on the same theme.

*her*" (emphases added)); *Brower*, 489 U.S. at 596–97 (requiring the use of force to be "*intentionally applied*" and the "detention or taking itself [to] be willful"). Applying it to someone or something else—that is, "for some other purpose"—is not a seizure if the officer conveyed no intent to restrain the person he touched. *Torres*, 592 U.S. at 317; *see Belton v. Loveridge*, 129 F.4th 271, 278 (4th Cir. 2025) (explaining that no seizure occurs when an officer accidentally hits a bystander "because the means of the seizure [are] not deliberately applied to the victim" (alteration in original) (citation omitted)). And here, all the objective evidence suggests Deputy Williams intended to stop the dog, not Hight.

III.

Some loose ends remain. One is Hight's argument that the district court "got the facts flat wrong." *See* Fed. R. Civ. P. 56(a) (allowing summary judgment only when there is "no genuine dispute as to any material fact"). She takes issue with what the court did not mention: the dog was a 9-pound Pomeranian mix; Williams's actions violated county and departmental policy; and she was, on her telling, "immediately behind" the dog. Neither of the first two facts, however, was material to the "threshold question" of whether a seizure occurred, *Dundon*, 85 F.4th at 1255; *see Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("[T]he Fourth Amendment's meaning [does] not change with local law enforcement practices . . . ."), and the third is contradicted by the bodycam video, *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

The other loose end is Hight's argument that Deputy Williams is liable for "creat[ing] the danger to which [she was] subjected." *Montgomery v. City of Ames*, 749 F.3d 689, 694 (8th Cir. 2014). This one fails for a different reason: she has raised it for the first time on appeal, so we will not consider it. *See Perry v. Precythe*, 121 F.4th 711, 716 (8th Cir. 2024) (noting that "our ordinary practice" is "not [to] consider" arguments the party "failed to raise . . . in the district court").

# IV.

We accordingly affirm the judgment of the district court.

COLLOTON, Chief Judge, concurring in the judgment.

This case is controlled by *Irish v. McNamara*, 108 F.4th 715 (8th Cir. 2024), and the judgment should be affirmed on that basis. *Irish* held that the law is not clearly established that an officer can seize a person "without subjectively intending to do so." *Id*. at 721. In this case, it is undisputed the Deputy Williams did not subjectively intend to seize Ms. Hight; it is undisputed that Williams subjectively intended to seize only her effect, the dog. Therefore, Williams is entitled to qualified immunity. *Id*. The district court correctly applied *Irish* and ruled that Williams is entitled to qualified immunity because "it was not clearly established as of August 30, 2022, that an officer in Arkansas could seize Plaintiff by shooting her without subjectively intending to do so."

Rather than resolve the appeal in a simple manner by applying circuit precedent, the majority insists on contradicting what the court said last year. The majority asserts that *Torres v. Madrid*, 592 U.S. 306, 317 (2021), established a test that disavowed any inquiry into what an officer subjectively thought. *Irish* said the opposite: "Like *Brendlin* [*v. California*, 551 U.S. 249 (2007)], *Torres* focused on 'objective intent,' but it didn't disavow the Court's prior statements or end any 'debate' on subjective intent's role in whether a seizure occurred. *See Gardner v. Bd. of Police Comm'rs*, 641 F.3d 947, 952-53 (8th Cir. 2011) (identifying where language in *Brower* [*v. Cnty. of Inyo*, 489 U.S. 593 (1989)] and *Brendlin* 'allude[d] to an officer's subjective state of mind')." *Irish*, 108 F.4th at 719-20.

*Irish* also explained that "importantly, decisions in the unintended-target cases imply that an officer's subjective state of mind is relevant in determining whether a seizure occurred." *Id*. at 720 (citing *Gardner*, 641 F.3d at 952, and *Moore v. Indehar*, 514 F.3d 756, 760 (8th Cir. 2008)) (internal quotations and alterations

omitted). That is not, as the majority would have it, a statement about how an officer conveyed his intent to the person confronted. *See also Gardner*, 641 F.3d at 953 ("In *Moore v. Indehar*, 514 F.3d 756 (8th Cir. 2008), the court explained that a plaintiff 'must show that [the officer] intended to seize [him] through the means of firing his weapon at [him] to establish a Fourth Amendment claim,' *id*. at 760, and adverted to the officer's deposition testimony as relevant evidence concerning '*his intentions* upon firing the weapon.' *Id*. at 761 (emphasis added).").

Beyond mischaracterizing *Irish*, the majority unwisely attempts to adopt a new constitutional test in a case where the complex issue of intent was barely addressed by the parties. The Supreme Court has observed that this approach "may create a risk of bad decisionmaking," because the courts of appeals "sometimes encounter cases in which the briefing of constitutional questions is woefully inadequate." *Pearson v. Callahan*, 555 U.S. 223, 239 (2009). The majority also risks confusion for future panels of this court who now must confront dueling panel opinions. *Cf. Degnan v. Burwell*, 765 F.3d 805, 809 n.6 (8th Cir. 2014) (explaining that when the court is faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panel that created the conflict).

The court should affirm the judgment on the straightforward reasoning of the district court and the decision last year in *Irish*. As the Supreme Court has cautioned, "courts should think hard, and then think hard again, before turning small cases into large ones" by unnecessarily addressing constitutional questions in qualified immunity cases. *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

_____